(No. 32475.—

The Union Cemetery Association of the City of Lincoln, Illinois, *et al.,* Appellants, *vs.* Benjamin O. Cooper, Auditor of Public Accounts, *et al.,* Appellees.

*Opinion filed January 22, 1953.*

24

ENSEL, MARTIN, JONES & BLANCHARD, of Springfield, MILLER & MILLER, of Lincoln, and MILLER & ELLISON, of Sterling, for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, JOHN T. COBURN, and WAYNE R. COOK, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

Appellants, The Union Cemetery Association of the city of Lincoln, Illinois, an Illinois nonprofit corporation, Riverside Cemetery Association, a corporation, and The Lyndon Cemetery Association of Lyndon Township, Whiteside County, Illinois, an Illinois nonprofit corporation, brought separate actions in the circuit court of Sangamon County against the Auditor of Public Accounts and the Attorney General of the State of Illinois. Each of the complaints filed sought substantially the same relief. The court was asked to declare the rights and obligations of the parties under the Cemetery Care Act; (Ill. Rev. Stat. 1951, chap. 21, par. 64.1 *et seq.,*) that the act be declared and construed as not applying to appellants or to care funds theretofore deposited with them or which might thereafter be so deposited; that the court declare the act illegal and void in contravention of the constitutions of the United States and of the State of Illinois and that the defendants be enjoined from enforcing the act against the appellants. Motions to dismiss the complaints were filed on behalf of the Auditor and Attorney General in each case alleging that

the complaints were insufficient in law and in equity and asserting the constitutionality of the Cemetery Care Act. The cases were later consolidated upon motion of the defendants, and on January 3, 1952, the trial judge entered a decree in the consolidated cause striking the complaints and dismissing the case for want of equity and upon the merits. From this decree appellants have appealed directly to this court because of the constitutional questions involved.

The facts set forth in the complaints show that appellants were similar in purpose, organization and operation. The Union Cemetery Association and The Lyndon Cemetery Association were organized under the act concerning corporations not for pecuniary profit. (Ill. Rev. Stat. 1951, chap. 32, par. 163a.) They have been in existence and continuous operation since 1880 and 1882, respectively. The Riverside Cemetery Association was organized under the provisions of "An Act to provide for the ownership, management and control of Cemetery Associations," approved May 14, 1903. (Ill. Rev. Stat. 1951, chap. 21, par. 35 *et seq.*) The fact that the Riverside association is organized under a different statute is not material and does not affect the questions raised in this appeal. Each of appellant associations is controlled and managed by a board of trustees chosen by members of the association; each owns certain cemetery property in which a large number of burials have been made over the years and each is a civic or community organization maintained for the public generally with no restriction or discrimination by reason of the race, color or religious affiliation of its members. Appellants are all nonprofit organizations having no capital stock, no shares of stock and no stockholders. The only requirement for membership in these associations is the ownership of a lot or lots in the cemetery controlled and operated by the association. At the time of the filing of the complaints each of these cemetery associations had a perpetual care fund which was held and managed by the same board of trustees who

held and managed the real estate of the association. The Union Cemetery Association, for example, had entered into approximately 984 agreements with purchasers of lots and burial space for the application of the income from the perpetual care fund in perpetuity for the care and maintenance of the lots. As of January 1, 1948, the perpetual care fund of this association had investments with a fair market value in excess of $87,000.

It is conceded that there are in existence and in operation in the State of Illinois numerous nonprofit cemetery associations similar to appellants; that many of these are incorporated under the provisions of the act of 1903, with the trustees under the supervision of the county court of the county in which the cemetery is located; that others are managed and operated by trustees according to the rules and regulations of each association and are not incorporated. It is also conceded that there are approximately 14,000 nonprofit corporations of one kind or another organized and operating under the laws of the State of Illinois; that, other than cemeteries, these include principally civic, fraternal, religious, charitable, educational and recreational groups; that many of these have large endowment and trust funds for the maintenance and care of buildings, homes and grounds used by the respective organizations. Among the cemeteries of the State are those operated by municipalities, and by fraternal, religious and family groups.

The full title of the act challenged by appellants is "An act to regulate the care funds of cemeteries and of lots, graves, crypts, niches, private mausoleums, memorials, markers or monuments in cemeteries." The act was approved July 21, 1947, effective January 1, 1948. An understanding of the purpose, scope and nature of the act requires a brief statement of its essential provisions. After providing for its short title in section 1, section 2 of the act proceeds with a definition of the terms used. "Care," under the act, is stated to mean "the care and maintenance,

including overhead, of a cemetery and of the lots, graves, crypts, niches, family mausoleums, memorials and markers therein." "Cemetery authority" means "any person, firm, corporation, trustee, partnership, association or municipality owning, operating, controlling or managing a cemetery or holding lands for burial grounds or burial purposes." A "Family burying ground" is defined as "a cemetery in which no lots are sold to the public and in which interments are restricted to a group of persons related to each other by blood or marriage." A "Fraternal cemetery" is defined as "a cemetery owned, operated, controlled or managed by any fraternal organization or organizations; or a cemetery under the control and supervision of any cemetery authority or any fraternal organization or organizations in which the sale of lots, graves, crypts or niches is restricted principally to members, and members of their families, of such organization or organizations, or auxiliaries thereof." A "Municipal cemetery" under the act is "a cemetery owned, operated, controlled or managed by any city, village, incorporated town, township, county or other municipal corporation, political subdivision or instrumentality thereof authorized by law to own, operate or manage a cemetery." A "Privately operated cemetery" is stated to be "any cemetery other than a fraternal, municipal or religious cemetery or a family burying ground." A "Religious cemetery" is defined as "a cemetery owned, operated, controlled, or managed by any recognized church, religious society, association or denomination, or by any cemetery authority or any corporation administering, or through which is administered, the temporalities of any recognized church, religious society, association or denomination."

Certain provisions of the act apply only to privately operated cemeteries. These cemeteries are required to secure a license from the Auditor of Public Accounts before acquiring care funds. In order to secure such a license detailed information as to personnel and finances must be

given and the license may be refused if certain specified conditions are not met. A privately operated and licensed cemtery must file an annual report with respect to its care funds. This report must show the income to and disbursements from the fund and list the securities in which the fund is invested. The books of such cemetery must be open at all times to inspection. In the administration of care funds privately operated cemeteries are subject to examination, supervision and regulation by the Auditor who may, upon certain conditions, revoke the license to handle care funds either temporarily or permanently. Before accepting care funds in connection with the sale of burial space a private authority must specify in writing the nature and extent of the care to be furnished, for which it must require the deposit of a given amount based upon sale price or the size of the burial space. Except where excused by the act, these private associations are required to post a bond to insure the proper handling of care funds.

Some of the provisions of the act apply to all cemeteries. All cemeteries are authorized to receive and hold money or property in trust in perpetuity for cemetery care. When such funds are accepted all cemeteries are required to invest them as provided by the Probate Act. The funds may be commingled. The care funds of cemeteries are exempted from the operation of the statute of mortmain and from the laws against perpetuities and accumulations. No cemetery may, in connection with the sale of burial space or other accommodation, advertise "perpetual care" or "eternal care" or the like, but may advertise, represent, guarantee, promise or contract that care will be furnished only from the net income of care funds held in trust and that cost of administration is to be deducted with other expenses in computing net income. All cemeteries are required to register with the Auditor on or before January 15, 1948, indicating whether it is claimed that operations are of a fraternal, religious, municipal or family character. Where

such claim is made and the Auditor reaches a different conclusion a method of hearing and review is provided for.

Appellants contend that the act is in violation of section 22 of article IV of the constitution of 1870 because it confers special privileges on selected cemeteries. It is also contended that the statute discriminates between appellants and other cemeteries, thereby denying to appellants the equal protection of the laws as guaranteed by the fourteenth amendment to the United States constitution and section 2 of article II of the Illinois constitution. Both arguments are based upon the fact that fraternal, religious, municipal and family cemeteries are exempt from the operation of many of the provisions of the act. Appellants say that this is a purely arbitrary discrimination not founded upon any reasonable basis and having no reasonable relation to the ends sought to be attained.

Counsel for both sides concede that the questioned statute must be justified, if at all, as an exercise of the legitimate police power of the State of Illinois. This power has been reserved to all of the States by the constitution of the United States. While the legislatures of the various States have the authority to meet existing evils by the passage of appropriate laws in the legitimate exercise of the power, it is not without limitation or restriction under the constitutions either of the various States or of the United States. (*Marallis* v. *City of Chicago,* 349 Ill. 422; *Connally* v. *Union Sewer Pipe Co.* 184 U.S. 540.) The power may not be exercised in a purely arbitrary manner, where the result is a denial of equal protection of the laws or the conferring of special privileges. (*Frost* v. *Corporation Commission,* 278 U.S. 515; *Smith* v. *Cahoon,* 283 U.S. 553; *Hartford Insurance Co.* v. *Harrison,* 301 U.S. 459.) What amounts to a denial of equal protection of the laws is always difficult of determination. The Supreme Court of the United States has said that no rule can be formulated which covers every case, but that the guarantee

of the equal protection of the laws means "that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." *Missouri v. Lewis,* 101 U.S. 22, 31.

But, within the indicated limitations, the legislatures of the States have broad discretion in the passage of statutes in exercise of the power, including the making of classifications for police regulation. (*People* v. *Monroe,* 349 Ill. 270.) The legislature must determine when evils calling for the exercise of the police power exist. It must also determine what means shall be adopted to prevent them. These are purely legislative as distinguished from judicial functions. When the legislature, having considered the problem, acts upon it by the passage of legislation, the presumption is that the act is a valid exercise of the police power. One assailing the statute must carry the burden of showing that it does not rest upon any reasonable basis but is entirely arbitrary. (*Stewart* v. *Brady,* 300 Ill. 425; *O'Gorman & Young* v. *Hartford Insurance Co.* 282 U.S. 251.) Though the power cannot be arbitrarily exercised, the legislature may determine upon what difference a distinction may be made for the purpose of statutory classification between objects otherwise having resemblance. (*International Harvester Co.* v. *Missouri,* 234 U.S. 199.) A distinction in legislation is not arbitrary if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed in the absence of proof or judicial knowledge to the contrary. *Lindsley* v. *Natural Carbonic Gas Co.* 220 U.S. 61; *Borden's Farm Products Co.* v. *Baldwin,* 293 U.S. 194.

A law may be constitutional though the legislature does not extend its regulations to all cases it might possibly reach. The legislature may recognize degrees of harm and confine its regulatory action to those classes of cases where

the need is greatest. (*Patsone* v. *Pennsylvania*, 232 U.S. 138.) If the evil is specially experienced in a particular branch of business it is not necessary that the prohibition be in all-embracing terms. (*Carroll* v. *Greenwich Insurance Co.* 199 U.S. 401.) If the law presumably hits the evil where it is most felt, it is not to be overthrown merely because there are other instances to which it might have been applied. *Miller* v. *Wilson*, 236 U.S. 373.

In the recent case of *People* v. *Deatherage*, 401 Ill. 25, this court, restating the principles of the validity of legislative classifications, said: "There cannot be a constitutional objection to the classification of persons, or objects, for the purpose of legislative regulation, so long as it is not arbitrary and is founded upon some substantial difference properly related to the classification. Classification is a legislative function. It can never become a judicial question unless a court is confronted with the question whether the legislature acted unreasonably in a particular circumstance. We must be able to say that there is no fair reason for the law which would not require with equal force its extension to others it did not touch. (*Hansen* v. *Raleigh*, 391 Ill. 536.) When the classification is reasonably adapted to accomplish the legislative purpose and is not arbitrary, it will be sustained. (*Stearns* v. *City of Chicago*, 368 Ill. 112.) The plaintiff must carry the burden of showing the classification is arbitrary and does not rest upon a reasonable array of facts warranting the classification. *Stewart* v. *Brady*, 300 Ill. 425."

It appears that prior to the passage of the act here questioned a Cemetery Commission was created by action of the Sixty-fourth General Assembly of the State of Illinois. This commission studied the problems relative to the operation of cemeteries in this State, particularly those relating to advertising for perpetual care and the handling of care funds. As a result of its investigations the commission recommended to the Sixty-fifth General Assembly

the passage of the Cemetery Care Act. The act shows upon its face that the principal evils sought to be remedied were those relating to possible frauds or mismanagement in the handling of care funds and those in connection with the advertising and sale of accommodations to which funds for care were to be devoted. It is not denied that the legislature, in the exercise of the police power, had the authority to remedy any evils it found to exist. Presumably the legislature determined, from the facts before it and from experience, that religious, fraternal, municipal and family cemeteries did not need the type or extent of regulation provided in the act for privately operated cemeteries. This, as we have indicated, was a legislative function. It cannot be assailed merely because some persons might disagree with the result. Merely to be able to find fault with the law as passed does not establish its invalidity. If the classification is not arbitrary and is based upon some substantial difference between the classes, bearing a proper relation to the purpose sought to be attained by the statute, the act will be upheld.

The courts of this and other States have from time to time upheld the validity of legislation exempting fraternal organizations from the operation of regulatory statutes. (*People* v. *Commercial Life Ins. Co.* 247 Ill. 92; *Commonwealth* v. *McDermott,* 296 Pa. 299, 145 Atl. 858; *Ex Parte White,* 56 Okla. Cr. 418, 41 Pac. 2d 488; *Kenton & Campbell Burial Assn.* v. *Quinn,* 244 Ky. 260, 50 S.W. 2d 554.) The relations among members of a fraternity or fraternal organization and those among members of the general public without fraternal ties are observably different. It is common knowledge that those knit together in the bonds of fraternity usually have a deep and abiding concern for their mutual welfare and the welfare of their families. Most fraternal organizations are founded upon the principle of brotherly love. It is well known that most of the leading fraternal organizations found in the United States have

had a continuous existence over many years. Some, indeed, antedate the American Revolution and the founding of the nation. The ideals and benevolent works of these brotherhoods are public knowledge. We believe that the legislature had sound reasons for leaving to these associations the supervision of funds for the care of cemeteries dedicated as the final resting places of members and their families. While it is true, as we have said, that the classification must have reasonable relation to the end sought to be attained, we believe that the classification excluding fraternal cemeteries from the licensing and supervisory provisions of the law has reasonable basis in fact and bears a reasonable relation to the principal purpose of the law.

What has been said of fraternal cemeteries applies with even greater force to religious cemeteries. In religious organizations the ties of man with man are augmented by the ties of man with the Supreme Being. For centuries the accepted place for the burial of the dead was the "church yard," a place adjacent to the church structure. The burial of the dead became one of the functions of religion and it is common knowledge that today religious organizations exist which prohibit their members from being interred in any but consecrated ground. The members of the legislature must have believed, and with reason, that the care of the religious burial ground and supervision of its care funds could best be left to the church or religious association. We cannot say that such a decision amounts to arbitrary or capricious discrimination.

Under the laws of this State relating to municipalities, municipal cemeteries may be established. When they are so established they are operated the same as any other agency of the government. The persons who administer the affairs of the municipal cemetery are selected by the officers who in turn are elected by the public and are subject to the public will and control. The books and records are at all times open to the public inspection and those handling

the funds are under bond. These safeguards may well be considered sufficient to insure honesty in the handling of care funds.

Briefly then, the legislature was made aware of certain evils which it felt should be remedied. This it could do by a proper exercise of the police power. The legislature, upon the basis of facts made to appear and upon experience, believed that certain cemeteries did not need the same type or extent of regulation as private cemeteries. It therefore passed a law classifying cemeteries of the various types and exempting certain cemeteries from compliance with certain portions of the statute. These classifications were based upon real and factual differences bearing a reasonable relation to the objects of the act. They are not arbitrary. We find, therefore, that the act is not unconstitutional as being discriminatory and denying equal protection of the law.

Appellants further contend that the powers granted to the State Auditor under sections 15 and 16 of the act are so unlimited, uncertain, arbitrary and oppressive that they constitute an invalid delegation of legislative authority in violation of article III and section 1 of article IV of the Illinois constitution. It is also argued that these sections violate the due process clauses of both the State and the United States constitutions because no rules or standards are set forth sufficient to reasonably inform a cemetery association of the grounds upon which it may be deprived of the right to hold care funds and be subjected to civil and criminal penalties. In this connection appellants argue that while section 15 allows the Auditor to revoke a license for the reason, *inter alia,* of failure to comply with any order or decision of the Auditor made pursuant to the provisions of the act, section 16, which empowers the Auditor to make certain orders, contains no standards under which the Auditor is to operate. Complaint is particularly directed to that portion of section 16 which provides that whenever

it shall appear to the Auditor "that the care funds have not been administered properly or that it is unsafe or inexpedient for such licensee or the trustee of the care funds of such cemetery authority to continue to administer such funds, * * * he shall, by an order, direct the discontinuance of such illegal, unsafe or unauthorized practices and shall direct strict conformity with the requirements of the law and safety and security in its transactions * * *." These provisions, it is said, are so uncertain and indefinite that they do not meet the requirements of due process of law and constitute an invalid delegation of legislative authority.

While section 15 does provide for the revocation of a license, such action can be taken only after notice is given specifying the grounds for the proposed action and an opportunity to be heard is afforded. Section 15 provides for appeals from the decisions of the Auditor in the manner provided by section 20, which section, in turn, provides for an appeal to the courts from any order, decision or finding of the Auditor. The grounds specified in section 15 for revocation are: (1) failure to file the annual report, (2) failure to maintain in effect the required bond, (3) failure to comply with any order, decision and finding of the Auditor, (4) violation of any provision of the act or of any regulation or direction made by the Auditor, and (5) that a fact or condition exists, which, had it existed at the time of original application, would have warranted the Auditor in refusing to issue the license. These grounds for refusal are set forth in section 10 of the act. They are definite and specific. They include concealment or misrepresentation, insolvency, fraud, refusal to furnish pertinent data, failure to notify of material facts requested in the application, failure to pay a judgment, and fraudulent practices. As we have indicated, violation of a regulation or direction made by the Auditor is one of the grounds for revocation, but by section 19 of the act the Auditor may

make no regulations of any kind or amend them without having a hearing on such regulations or amendments, of which notice must be given to all licensees under the act. Section 19 further provides that a review of all orders, decisions and findings, including orders making regulations and amendments, may be had as provided in section 20. Section 16 itself specifies definite ways in which care funds may be jeopardized and authorizes the Auditor to appeal to the circuit court of the county in which the cemetery is located to stop such harmful practices.

The Cemetery Care Act is very similar in its administrative and supervisory provisions to the Currency Exchange Act. (Ill. Rev. Stat. 1951, chap. 16½, par. 30 *et seq.*) Section 15 of the Currency Exchange Act gives the Auditor the power to revoke a license for failure on the part of the licensee to comply with any order, decision or finding of the Auditor, or for the violation of any provision, regulation or direction made by the Auditor. Section 19 of that act gives the Auditor authority to make and enforce such reasonable, relevant regulations, directions, orders, decisions and findings as may be necessary for the execution and enforcement of the act. Review by the courts of the question as to whether such rules and regulations are reasonable is provided in section 22. In *McDougall* v. *Lueder*, 389 Ill. 141, this court held that the Currency Exchange Act was invalid insofar as it gave the Auditor the right to require in the application for a license "such other information as he shall require," but held that the act as a whole was constitutional and unassailable on the ground that it amounted to an unconstitutional delegation of legislative power. In that case we pointed out that while the Auditor had the power to make reasonable rules, orders and regulations, review by the courts on the question as to whether his actions were reasonable was an ample safeguard. The safeguards against unreasonable and arbitrary action on the part of administrative officers are as

adequate under the statute now under consideration as those found in the Currency Exchange Act. We find that the act does not constitute an invalid delegation of legislative power or offend the due process clauses of the State and Federal constitutions.

Appellants also say that the Cemetery Care Act violates section 13 of article IV of the Illinois constitution. This section provides that no act thereafter passed by the legislature shall embrace more than one subject and that shall be expressed in the title. The argument is that the act by its title purports only to be an act regulating the care funds of cemeteries, whereas certain of its provisions deal with the creation of those funds. Particular reference is made to the first paragraph of section 3 which authorizes cemetery authorities to accept moneys, funds and property by gift or otherwise and to hold the same in trust in perpetuity for care purposes. The second paragraph of section 3, it is observed, provides for the investment of funds authorized and thus deals with regulation rather than the establishment of the funds.

This court has held that the word "subject" as used in the constitution signifies the matter or thing forming the groundwork of the act. It may contain many parts which grow out of it and are germane to it and which, if traced back, will lead the mind to it as a generic aid. (*People* v. *Sargent,* 254 Ill. 514.) The object of the provision as to titles in this section is to guard against inconsiderate legislation, to give information as to the subject of legislation with which the act deals and to prevent the joining in one act of incongruous or unrelated matters. (*People* v. *McBride,* 234 Ill. 146; *People* v. *Monroe,* 349 Ill. 270.) The object is to require the title of the act to express in general terms its purposes and to prevent surprise by the insertion in the act of provisions not related to its subject and which have no legitimate tendency to accomplish its purposes as expressed in the title. (*People* v. *Stokes,* 281 Ill. 159.) All

matters may be included in an act which are germane to the title, and all matters may be included in the title which relate to the same general subject. (*People ex rel. Lindstrand* v. *Emmerson,* 333 Ill. 606.) In *People* v. *Blue Mountain Joe,* 129 Ill. 370, the validity of "An act to regulate the practice of medicine" was challenged because one of the sections required a license and it was pointed out that the title of the act said nothing about licensing. This court held that regulation of the practice of medicine necessarily included the means for determining who might lawfully exercise the right; that, therefore, the right to license was germane to and included in the general title of the act.

The title of the act now before us is sufficiently broad to prevent any cemetery authority from being taken by surprise. It is an act to regulate the care funds of cemeteries. The regulation of such funds necessarily implies the existence of the funds sought to be regulated. Their creation, therefore, is germane to the general subject of regulation. The act, therefore, does not offend section 13 of article IV of the State constitution in the particular manner alleged.

It is also said that the act violates the same section and article of the constitution because it amends the act of 1903 entitled "An Act to provide for organization, ownership, management and control of Cemetery Associations," (Ill. Rev. Stat. 1951, chap. 21, par. 35 *et seq.*) without inserting the amended act at length. We cannot find that the act now before us expressly or impliedly changes the act of 1903. The Cemetery Care Act is complete in itself and imposes duties upon trustees of cemeteries which are in addition to those imposed by the earlier act. The provisions of the earlier act are left unchanged so far as the Cemetery Care Act itself is concerned. In this same connection, counsel for appellees observe that at the time of the passage of the Cemetery Care Act in 1947 the same General As-

sembly amended section 5 of the act of 1903 (Ill. Rev. Stat. 1951, chap. 21, par. 39) to provide, "* * * when the cemetery is a privately operated cemetery, as defined in Section 2 of the Cemetery Care Act enacted by the Sixty-fifth General Assembly, then such cemetery association shall also comply with the provisions of the Cemetery Care Act." The effect of this provision was to incorporate the entire Cemetery Care Act by reference into the act of 1903. We have held that this does not violate section 13 of article IV. *Zeman* v. *Dolan,* 279 Ill. 295; *Evans* v. *Illinois Surety Co.* 298 Ill. 101.

The final contention of appellants is that the provisions of the statute requiring the posting of a fidelity bond and those requiring the taking of minimum deposits for care funds in connection with the sale of facilities or accommodations abridge freedom of contract as protected by sections 1 and 2 of article II of the Illinois constitution and the fourteenth amendment of the United States constitution. Appellants also say that these same provisions violate the due process clauses of both constitutions.

Section 8 of the Cemetery Care Act requires that privately operated cemeteries in existence as of January 1, 1948, file a bond at the time of making application for a license on January 15, 1948. Section 9 of the act requires privately operated cemeteries organized after January 1, 1948, to file the same sort of bond. The act requires that the bond be issued by a bonding company or insurance company authorized to do business in the State of Illinois where care funds exceed the sum of $10,000. The bond is required to be in one tenth of the amount of the care funds but in no case less than $1000 nor more than $100,000. The argument is that appellants' rights of contract are abridged by these provisions because they are denied the right to secure personal sureties or to deposit government securities in lieu thereof. In the case of *Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427, we considered at

some length a similar contention. The statute in question in the *Italia America `case* required the posting of a surety company bond by persons or corporations engaged in buying and selling foreign exchange. After examining the decisions of many jurisdictions, we concluded that the great weight of authority was to the effect that a statute requiring a bond from a surety company is not unconstitutional. We adopted that rule in deciding the case then before us.

Appellants argue that the evils sought to be remedied in the *Italia American case* were "proportionately different" than the evils sought to be remedied by the provisions of the Cemetery Care Act. We cannot agree. The purpose of requiring the bond in either case is to insure against the loss of funds by misappropriation or otherwise in the hands of those conducting a private business. Each activity is impressed with a public interest and is subject to governmental regulation. Appellants point out that there are a number of practical objections to the requirement that a fidelity bond be used. With these we are not concerned, and the arguments in that regard should be addressed to the legislature. Our only inquiry is whether, in requiring such a bond, the legislature has violated some constitutional right of appellants.

As to the suggestion that section 4, requiring minimum deposits in trust, is invalid to the extent that it exceeds the legitimate exercise of police power, no authority for this proposition has been cited and we have found none. The requirement that a cemetery association representing that it will give future care deposit a portion of the purchase price received from the sale of an accommodation in its care fund is a reasonable and practical way of assuring the purchaser that he will get that for which he bargained. We doubt not that one of the evils at which the act was directed was the practice of selling cemetery lots or other accommodations upon representation that future care would be

afforded without setting aside sufficient funds to provide an income for such care. The fact that the act goes further and specifies reasonable minimum amounts to be deposited upon the sale of each type of facility is certainly not objectionable. Without such provisions the act might be open to the objection that its provisions were too indefinite—an argument appellants themselves have urged against other sections of the statute. Appellants say that section 4 fails to take into account the capital increment realized by conservative trust management, which may, and often does, over a period of years, result in an increase in the funds, thus lessening the amount of principal required to furnish adequate care. This argument goes merely to the amount of the deposit required. It relates properly to legislative policy rather than judicial determination. We believe that appellants' fears that unnecessarily large trust funds may result are somewhat unwarranted, but should practice and experience show that the deposits required are too large, the legislature will doubtless see fit to change the requirements.

We hold, therefore, that the decree of the trial court dismissing the complaint for want of equity and upon the merits was correct, and it is affirmed.

*Decree affirmed.*