Cedar Bluff Cemetery Association et al., Trustees, Plaintiffs-Appellees, v. Frank J. Zuck et al., and The Third National Bank of Rockford, and Unknown Owners, Defendants, and Latham Castle, Attorney General of State of Illinois, and Orville E. Hodge, Auditor of Public Accounts of State of Illinois, Defendants-Appellants.

Gen. No. 10,751.

Opinion filed July 14, 1954. Released for publication July 30, 1954.

LATHAM CASTLE, Attorney General of State of Illinois, for appellants; GEORGE W. McGURN, of Chicago, and H. EUGENE HALLSTROM, of Rockford, Assistant Attorneys General, of counsel.

L. W. MENZIMER, and DALE F. CONDE, both of Rockford, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

Cedar Bluff Cemetery Association, a corporation, and the members of its Board of Trustees, filed a complaint in the circuit court of Winnebago county against certain lot owners of the cemetery, the Attorney General of the State of Illinois, and others. The complaint alleged that Cedar Bluff Cemetery Association was a cemetery corporation incorporated under a special Act of the General Assembly of the State of Illinois in February 1847; that the trustees, who are parties plaintiff, are charged under the charter and by laws of the association with its management; that said Cemetery Association operates the Cedar Bluff Cemetery on certain described twelve acres of land located in the City of Rockford, Illinois; that previous to July 16, 1948, said Cemetery Association held certain funds in trust, the income of which was for the perpetual care and upkeep of the cemetery and the lots therein, and that on July 16, 1948, said Cemetery Association qualified under the Cemetery Care Act (Chap. 21, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 17.88 et seq.]) and received, under said Act, License No. 169 issued by the Auditor of Public Accounts of the State of Illinois, and that said Cemetery Association has continued to hold its said trust funds in perpetuity for the care of said cemetery and the lots therein; that by virtue of an agreement dated June 7, 1947 the Cemetery Association appointed the defendant Third National Bank of Rockford, its agent to hold and administer the trust fund of the association.

The complaint further alleged that six of the named defendants are lot owners and beneficiaries of the trust fund and fairly represent the rights and interests of the entire class of lot owners of the Cemetery Association: That the trust fund of the Cemetery Association in November of 1952 amounted to $85,558.44: That the income from the trust fund has been for a long time insufficient to provide for the proper care and mainte-

nance of the cemetery and the lots therein; that there are no funds to pay the expenses of the cemetery and its upkeep and maintenance other than the income received from the trust fund; that the condition of the cemetery equipment is very poor and there are no funds available to purchase required new equipment and there is insufficient income from the trust fund to provide for the care of the cemetery and lots thereof.

It is also alleged that in order to carry out the terms and purposes of the trust, the corpus of the trust fund must be invaded in order to obtain funds with which to operate the cemetery, to purchase new equipment and to meet the recurring monthly expenses of the cemetery and to provide care for the cemetery lots and that said Cemetery Association could no longer continue to operate unless relief was granted by way of providing additional funds to cover its operation.

The relief prayed by the plaintiffs was that the terms of the Perpetual Care Trust be modified to permit the Cemetery Association to invade the corpus of the trust fund or in the alternative that the court instruct the plaintiffs in regard to the preservation of the trust estate: That the court dissolve the association and appoint a receiver to either distribute the property of the association or to continue the operation of the cemetery for the benefit of the lot owners: And that the present trustees be discharged from any further responsibility for the operation of the Cemetery Association.

Orville E. Hodge, as Auditor of Public Accounts of the State of Illinois, upon his petition therefor, was granted leave to intervene as a party defendant. The answers of the Auditor of Public Accounts and of the Attorney General admitted some of the allegations of the complaint and neither admitted or denied others but both answers averred that cemetery care funds of the type and nature possessed by the plaintiff associa-

tion are specifically made subject to the regulation and supervision of the Auditor of Public Accounts under the Cemetery Care Act (Ill. Rev. Stat. 1951, chap. 21, par. 64.1 et seq. [Jones Ill. Stats. Ann. 17.88]).

The issues made by the pleadings were heard by the chancellor who entered a final decree on January 7, 1954. This decree appointed the Third National Bank of Rockford receiver of all the property and assets of the Cemetery Association and directed the receiver to continue the business of the association for the benefit of the lot owners and authorized the receiver to operate the cemetery, sell lots and graves and directed it to pay all necessary operating expenses from the income of the cemetery. The trustees were ordered to deliver to the receiver all the assets of the association and to make a final report to the court of their acts within sixty days, and upon the approval of said final report, the trustees would be discharged from any further responsibility for the affairs of the Cemetery Association. The decree directed the receiver to make a report to the court at least once a year and provided that the receiver should be allowed reasonable compensation for its services. The prayer of the complaint asking for a modification of the terms of the Perpetual Care Trust so that the trustees of the association could invade the corpus of the trust fund was denied.

Thereafter, the trustees filed their final report, as trustees, reporting that they had turned over to the receiver all the assets and books of the association and requested the approval of their report and that they be discharged as trustees. Upon notice and a hearing, this report was approved and an order entered on March 4, 1954, discharging the trustees "from any further responsibilities for the affairs of said Cedar Bluff Cemetery Association." To reverse the order of March 4, 1954, and that portion of the order of January 7, 1954, which appointed the Third National Bank

of Rockford receiver and authorized it to continue the business of the Cemetery Association and directed the trustees to deliver to the receiver all the books and assets of the association, the Auditor of Public Accounts and the Attorney General appeal. The association and its trustees cross-appeal from the portion of the order of January 7, 1954, which denied the association authority to invade the corpus of its trust fund.

From the pleadings and evidence it appears that the Cedar Bluff Cemetery Association of Rockford was incorporated by a special act of the General Assembly of this state on February 18, 1847, and that the five individual plaintiffs comprise its present duly elected board of trustees and are charged by its charter and by-laws with the management thereof; that the association operates a cemetery containing approximately twelve acres of land in the City of Rockford and has since its incorporation; that on March 31, 1948, it held trust funds, invested in mortgages and bonds issued by the United States aggregating $75,897.94, the income from which was to be used perpetually for the care and upkeep of the cemetery and burial lots therein; that on July 16, 1948, the association qualified under the Cemetery Care Act of 1947 (Ill. Rev. Stat., chap. 21, secs. 64.1 to 64.24 [Jones Ill. Stats. Ann. 17.88–17.111]) and received from the Auditor of Public Accounts Cemetery Authority License No. 169; that on June 7, 1947, the association entered into an agreement with the Third National Bank of Rockford by the provisions of which the bank acted as the agent of the association to hold and administer its trust funds and received for its services $500 annually. On January 7, 1954, when the order appointing the receiver was entered, the association had in its trust fund securities aggregating in value $82,578.71 and cash amounting to $4,454.73, a total of $87,033.44. These securities consisted of seventeen real estate mortgages aggregating $47,178.71, and

the balance of the securities were Series G Saving Bonds issued by the United States.

The record also discloses that the trustees expended for operating the cemetery for the fiscal year ending March 31, 1947, $1,047.56 in excess of the $5,373.25 they received. For the fiscal year ending March 31, 1948, the disbursements for operating expenses exceeded the receipts $3,077.93. For the year ending March 31, 1949, there was a deficit of $1,357.22; for the year ending March 31, 1950, there was a deficit of $1,637.78; for the year ending March 31, 1951, there was a deficit of $1,306.37; for the year ending March 31, 1952, there was a deficit of $1,571.70; and for the year ending March 31, 1953, there was a deficit in the operating account of $822.75. The evidence further discloses that the present cemetery equipment needs to be replaced, the buildings need to be repaired and painted, and the roads resurfaced. The president of the board of trustees of the association testified that the grounds, shrubbery and trees needed care and attention; that the association needed a new truck and mower, and that it would cost about $5,000 to fix up the roads and at least $10,000 "to put the cemetery property back to normal."

Under the charter and by-laws of the Cedar Bluff Cemetery Association, the trustees are charged with the management of the corporation. These trustees applied to the Auditor of Public Accounts for a license to accept care funds and on July 16, 1948, received from the auditor Cemetery Authority License No. 169, as provided by the Cemetery Care Act which became effective on January 1, 1948 (Ill. Rev. Stat. 1953, chap. 21, secs. 64.1 to 64.24 [Jones Ill. Stats. Ann. 17.88–17.111]). The constitutionality of that Act was sustained in *Union Cemetery Ass'n of City of Lincoln v. Cooper,* 414 Ill. 23.

Among other things, the Cemetery Care Act of 1947 provides for the licensing of cemetery associations within the purview of the Act; authorizes such associations to accept gifts of money or property of any kind and hold the same in trust in perpetuity for the care of the cemetery or any lot thereon. The Act permits such licensed cemetery to advertise and contract that care will be furnished only from the net income which is derived from funds held in trust as provided in section 3 of the Act [Ill. Rev. Stats. 1953, ch. 21, § 64.3; Jones Ill. Stats. Ann. 17.90]. Every licensee is directed to keep such books, accounts and records as will enable the auditor to determine whether the licensee is complying with the provisions of the Act and with the rules, regulations and directions which may be made by the auditor. The Act also provides for the management, use and investment of "care funds," provides supervision by the auditor, and grants to the auditor authority to revoke a license previously issued upon notice and a hearing, and when that is done the auditor shall apply to the circuit court of the county wherein such licensee is located for a receiver to administer the care funds of the licensee. The Act also outlines the procedure for review of the orders of the auditor and contains many other provisions having to do with the regulation of perpetual cemetery care funds.

Counsel for appellees state that the present trustees have lost interest in this cemetery (although they are all lot owners) and that they are discouraged; that they intend to resign as trustees, and it will not be possible to find successor trustees as proper care for the cemetery cannot be provided from the funds now available. Counsel argue that unless a receiver is appointed with authority to run the cemetery business and continue it for the benefit of all the lot owners the cemetery "will go completely to pieces," and counsel insists

185

that under the circumstances disclosed by this record, a court of equity has jurisdiction to appoint a receiver.

██ Appointing a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by decree in equity. (*Blanchard Bro. & Lane v. S. G. Gay Co.*, 289 Ill. 413.) Courts of chancery have no general power to appoint receivers of corporations. The general rule is that they can only appoint receivers where expressly authorized by statute and then the authority is limited to the terms of the Act conferring the power. (*Steenrod v. L. M. Gross Co.*, 334 Ill. 362, 368; *People v. Peoria Life Ins. Co.*, 357 Ill. 486, 489, 490.)

██ A court of equity is possessed of no inherent general power to appoint a permanent receiver of a corporation. It can only appoint a permanent receiver where a statute authorizes such an appointment or where fraud, mismanagement or dissension in the corporate affairs is alleged and proved as a foundation for a claim for equitable relief. (*People v. Niehaus*, 356 Ill. 104, 108; *People v. Shurtleff*, 353 Ill. 248, 262; *Firebaugh v. McGovern*, 404 Ill. 143, 149.)

What the decree in this case does is to relieve the trustees of their duties and obligations as managers of this cemetery and transfers the management thereof to the Third National Bank of Rockford. This is done on the request of the trustees whose sole complaint is that unless they are permitted to invade the corpus of the care fund they do not have sufficient income with which to defray the expenses of operating the cemetery as they wish it operated. The corporate plaintiff does not in its complaint charge any fraud, mismanagement or dissension by or among the trustees, nor do the individual plaintiffs allege any misconduct on their part. Just how the trust officer of the Third National Bank can operate the cemetery business any

186

better than the present board of trustees does not appear from the record, nor has it been suggested by counsel. It is true that the trustees receive no compensation for their services, but the record shows that since June 8, 1947, the obligations and duties of the individual plaintiffs, as trustees, have been taken over by the Third National Bank as a paid agent for the trustees. What could be accomplished by the substitution of a receiver for the board of trustees to operate and manage the Cemetery Association's affairs is left solely to conjecture.

No authority has been cited and we have found none which would authorize a court of equity, upon the record we are reviewing, to enter a decree directing the duly chosen trustees of this association to turn over the assets of the association to a receiver appointed by the chancellor. Nor is there any authority for the entry of the order discharging the trustees from any further responsibility for the affairs of the Cemetery Association; nor has any authority been cited which would authorize a court of equity to permit the trustees to expend any portion of its care fund in resurfacing the roads in the cemetery, buying a new power mower or equipment of any kind, or to pay out of said care fund any part of the current expense necessary for the operation of the cemetery.

■■ Section three of the Cemetery Care Act (Ill. Rev. Stat. 1953, chap. 21, par. 64.3 [Jones Ill. Stats. Ann. 17.90]) provides, among other things: "The trust funds authorized by this Section (hereinafter called care funds) shall be held intact . . . and the net income only from such investments shall be allocated and used for the purposes set forth in the paragraph immediately preceding . . ." etc. This Cemetery Association, although operating under a special charter, had a right to come under the Cemetery Care Act of 1947 and to subject its trust funds, including those

187

previously held by it as well as those funds thereafter collected, to the provisions of the Act. (*Rosehill Cemetery Co. v. Lueder,* 406 Ill. 458, 470–2.) This association elected to come under the Act and is bound by its provisions.

In *Union Cemetery Ass'n of City of Lincoln v. Cooper,* 414 Ill. 23, the court stated (pp. 33–34) that prior to the passage of the Cemetery Act of 1947 the sixty-fourth General Assembly of this State created a commission which studied the problems relative to the operation of cemeteries of this State, particularly those relating to advertising for perpetual care and the handling of care funds and that as a result of its investigation, the commission recommended to the General Assembly the passage of the Cemetery Care Act. The court then continues (p. 34) : "The act shows upon its face that the principal evils sought to be remedied were those relating to possible frauds or mismanagement in the handling of care funds and those in connection with the advertising and sale of accommodations to which funds for care were to be devoted. It is not denied that the legislature, in the exercise of the police power, had the authority to remedy any evils it found to exist."

In our opinion, the Cemetery Care Act gives the Auditor of Public Accounts supervisory power over cemeteries licensed under this Act and requires the auditor to apply to the circuit court in which the association is located for the appointment of a receiver when the facts justify such action. In the instant case, the auditor is not seeking the appointment of a receiver, but he is resisting the application of the association itself and its trustees for the appointment of a receiver. Whether the right given to the auditor by the provisions of the Cemetery Care Act to apply for a receiver is exclusive or not need not be passed upon in this appeal.

188

■ The provisions of the Cemetery Care Act prohibit cemetery associations licensed under the Act from invading the corpus of its trust funds. Appellee, Cemetery Association, is so licensed. The chancellor properly denied the prayer of the complaint which sought to invade this fund for the payment of the current expenses of operating the cemetery, and that portion of the order of January 7, 1954, will be affirmed. The court did err, however, in appointing the Third National Bank of Rockford receiver and in approving the current report of the trustees and in discharging them from any further responsibility for the operation of the Cedar Bluff Cemetery Association, and that portion of the orders appealed from will be reversed.

*Affirmed in part; reversed in part.*

WOLFE, J., concurs.

MR. PRESIDING JUSTICE ANDERSON took no part in the consideration or decision of this case.