**GEORGIA CEMETERY ASSOCIATION, INC.,**
**Plaintiff,**

v.

**Cathy COX, in her official capacity as Secretary of State of the State of Georgia, Defendant.**

**No. CIV.A. 100CV2393JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 7, 2003.

Christopher Scott Anulewicz, Michael J. Bowers, Thomas Joshua Archer, Balch & Bingham LLP, Atlanta, GA, for Plaintiff.

Andrew John Ekonomou, Michael George Lambros, Paul Edwin Nystrom, III, Ekonomou Atkinson & Lambros, John C. Jones, Office of State Attorney General, Nicholas G. Dumich, Atlanta, GA, for Defendant.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Defendant's motion for summary judgment [46–1] and Plaintiff's motion to file sur-reply [56–1].

## I. Statement of the Case

### A. Procedural History

Plaintiff, Georgia Cemetery Association, Inc. ("Plaintiff" or "Association"), filed the instant suit against Defendant, Cathy Cox, in her individual capacity and in her official capacity as Secretary of State of the State of Georgia, seeking declaratory and injunctive relief against Defendant's enforcement of the Georgia Cemetery and Funeral Services Act of 2000 (the "Act"), O.C.G.A. § 10–14–1, *et seq.,* and certain rules promulgated by Defendant. Plaintiff is a non profit Georgia corporation, the majority of whose members are in the private, for-profit cemetery business in Georgia. Plaintiff later dismissed its claims against Cox in her individual capacity. Plaintiff's complaint initially enumerated eleven grounds for relief: (1) violation of equal protection as a result of applying Act to private cemeteries not affiliated with fraternities, churches, synagogues, or communities, (2) violation of the Establishment Clause of the First Amendment of the United States Constitution, (3) violation of equal protection by requiring pre-need providers to refund entire amount of funds deposited in pre-need trust accounts at any time before need, (4) violation of Article I, Section 10 of the United States Constitution—impairment of contracts, (5) violation of the Fifth Amendment Takings Clause—monument sitting, (6) violation of the Fifth Amendment Takings Clause—transfer of burial rights, (7) violation of state constitutional prohibition on impairing contracts, (8) violation of state constitutional prohibition on encouraging monopoly, (9) violation of state constitutional guarantee of due process—O.C.G.A. § 10–14–7(c)(2), (10) violation of state constitutional guarantee of due process—O.C.G.A. § 10–14–7(d), and (11) 42 U.S.C. § 1988 attorneys' fees.

In an order dated March 21, 2002, the court granted Defendant's motion to dismiss Counts 4 through 7 of Plaintiff's complaint, which asserted claims under the Takings Clause of the Fifth Amendment of the United States Constitution and the Contracts Clause of both the United States and Georgia Constitutions. Specifically, the court found that (1) Plaintiff lacked associational standing to bring its Takings Clause claims, and (2) Plaintiff failed to state a claim under the Contracts Clause because the provisions of the Act explicitly require that it be applied prospectively only. At a status conference on May 6, 2002, Plaintiff informed the court that it wished voluntarily to dismiss without prejudice counts 7 through 10 of the Complaint. The court granted that unopposed motion. Before the court now is Defendant's motion for summary judgment on the remaining three counts in Plaintiff's complaint.

### B. Contentions

Plaintiff contends that the Act violates the Equal Protection Clause of the United

States Constitution because it regulates only private cemeteries and because it requires only private cemeteries to refund payments for "pre-need services." Plaintiff also argues that the Act violates the Establishment Clause of the First Amendment of the United States Constitution because it exempts from regulation religious cemeteries. Defendant responds that the Georgia Legislature has a rational basis for choosing to regulate private cemeteries, and thus, the Act survives equal protection scrutiny. Defendant also contends that the Act does not violate the Establishment Clause because it has a secular purpose and benefits both religious and non-religious organizations.

## II. Discussion

### A. Equal Protection Clause (Application to Private Cemeteries Only)

The Act "regulate[s] pre-need dealers, licensees, registrants, and cemetery companies in" Georgia but "only to the extent necessary to protect the public from significant or discernible harm or damage and not in a manner which will unreasonably affect the competitive market." O.C.G.A. § 10–14–2(a). The Act mandates that "cemetery" "shall not include governmentally owned cemeteries, fraternal cemeteries, cemeteries owned and operated by churches, synagogues, or communities or family burial plots." O.C.G.A. § 10–14–3(8). Plaintiff argues that the Georgia Legislature did not have a rational basis for its regulation through the Act because hearings conducted throughout the state in 1999 by the Secretary of State's office revealed complaints mostly about church operated—and not privately owned—cemeteries. Plaintiff further contends that the number of church-owned cemeteries in Georgia exceeds 1000 while the number of privately owned cemeteries is approximately 200. *See* Affidavit of Jack Frost II ("Frost Aff."), ¶ 8.[1] Moreover, Plaintiff argues, of the 1000 church owned cemeteries, only 10–20% are regularly maintained, while 50–60% are abandoned and in complete disrepair. *Id.,* ¶¶ 9–10. As such, Plaintiff contends that the Act has no rational relationship between the purported reasons and the law itself. Defendant states that the purpose behind the regulation of private cemeteries only is the belief that churches and other fraternal organizations are more likely to care for their cemetery grounds and have a closer relationship with their consumers which generally precludes concern about fraud.

■ In *Federal Communications Commission v. Beach Communications, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), the Supreme Court again set out the framework for analyzing equal protection challenges to statutes not involving suspect classes in areas of social and economic policy.[2] *Beach* analyzed the Cable Communications Policy Act of 1984 where Congress distinguished between the regulation of cable television facilities in separately owned and managed buildings as opposed to buildings under common ownership and management, exempting those in the latter category from regulation under certain circumstances. *Id.* at 309, 113

1. Defendant objects to the affidavit testimony of Jack Frost, the First Vice President of the Georgia Cemetery Association, Inc. Defendant contends that portions of Mr. Frost's testimony are not based on first-hand knowledge and that Mr. Frost provides his opinions on matters of economics and accounting for which he has no cited expertise. The court cites to Mr. Frost's testimony to provide context for Plaintiff's arguments only. Because it does not rely on Mr. Frost's testimony, the court need not resolve Defendant's objections to it.

2. Plaintiff does not contend that private cemeteries are a suspect class.

S.Ct. 2096. As an initial matter, the Court noted:

equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights · must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.... The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.

*Id.* at 313–14, 113 S.Ct. 2096 (quotations and citations omitted). On a "rational-basis review" the classification bears a "strong presumption of validity" and a party challenging the classification must "negate every conceivable basis which might support it." *Id.* at 314–15, 113 S.Ct. 2096. Significantly, the Court stated that "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315, 113 S.Ct. 2096. Furthermore, the Court noted that these "restraints on judicial review have added force where the legislature must necessarily engage in a process of line-drawing." *Id.* (quotation and citation omitted).

Defining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries— inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.

*Id.* at 315–16, 113 S.Ct. 2096 (quotation and citation omitted).

As the Court noted with respect to the cable regulation at issue in *Beach,* Congress delineated the bounds of the regulatory field by subjecting some systems and not others to regulation. "Such scope-of-coverage provisions are unavoidable components of most economic or social legislation. This necessity [of line-drawing] renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Id.* at 316, 113 S.Ct. 2096 (citing *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). In *Beach,* the Court accepted as the basis for the distinction the belief that "common ownership was thought to be indicative of those systems for which the costs of regulation would outweigh the benefits to consumers." *Id.* at 317, 113 S.Ct. 2096. The Court concluded by noting that the "assumptions underlying these rationales may be erroneous, but the very fact that they are 'arguable' is sufficient, on rational-basis review, to 'immunize' the [legislative] choice from constitutional challenge." *Id.* at 320, 113 S.Ct. 2096 (citation omitted).

The Eleventh Circuit applied this analysis in *Panama City Medical Diagnostic Ltd. v. Williams,* 13 F.3d 1541 (11th Cir. 1994). There, the plaintiffs alleged that a Florida statute exempting hospitals and group practices from statutory fee cap on the provision of diagnostic imaging services violated the Equal Protection Clause. The court noted that "in cases involving economic classifications, the rational basis test is extremely lenient." *Id.* at 1545 (citing *Beach* ). "A searching inquiry into the validity of legislative judgments con-

cerning economic regulation is not required .... The task is to determine if any set of facts may be reasonably conceived of to justify the legislation." *Id.* (quotation and citation omitted). Thus, "even if these rationales are based on faulty premises, the fact that they are arguable guides our decision in this case." *Id.; see also Haves v. City of Miami*, 52 F.3d 918 (11th Cir. 1995) (rejecting equal protection challenge to city ordinance that banned houseboats in the city, but "grandfathered" certain city areas).

█ Here, the purpose of the Act was to protect consumers and the public welfare, health and safety. For example, it requires the establishment of a "perpetual care trust fund" to assure the reasonable care and maintenance of a cemetery beyond the existence of its current owner. Plaintiff admits that there is a legitimate governmental purpose in regulating cemeteries in general. Thus, the court need not address this issue further. Plaintiff contends, however, that there is no rational relationship between the purpose of the Act and the regulatory scheme designed under the Act.

Defendant argues that the manner in which the statute was crafted rationally relates to its purpose, pointing to the discussion in *Union Cemetery Association v. Cooper*, 414 Ill. 23, 110 N.E.2d 239 (1953), where private cemeteries challenged a statute which exempted religious and fraternal organizations from the majority of its regulatory scope. The *Union Cemetery* court stated that the

> relations among members of a fraternity or fraternal organization and those among members of the general public without fraternal ties are observably different. Most fraternal organizations are founded upon the principle of brotherly love. It is well known that most of the leading fraternal organizations found in

the United States have had a continuous existence over many years.... We believe the legislature had sound reasons for leaving to these associations the supervision of funds for the care of cemeteries dedicated as the final resting places of members and their families. *Id.* at 34–35, 110 N.E.2d 239. The court noted that these reasons were even stronger when considering a religious organization. *Id.* at 35, 110 N.E.2d 239. "The members of the legislature must have believed, and with reason, that the care of the religious burial ground and supervision of its care funds could best be left to the church or religious association." *Id.* With respect to public community cemeteries, the court noted that fraud was less likely to occur there because the public could examine its books and accounting. *Id.* Defendant proffers all of these as reasons for why it is rational to exempt fraternal, religious, governmental, community, and family cemeteries from regulations which cover private cemeteries.

Here, the gravamen of Plaintiff's argument, as evidenced by the testimony set forth in Jack Frost's affidavit, is that the Act is not supported by evidence or empirical data. *See* Frost Aff., ¶¶ 6–10 (stating that the majority of cemeteries in Georgia are church-owned and that many of the church-owned cemeteries are in disrepair). The court, however, is not a "factfinder" in the legislative process. Defendant contends that the Georgia Legislature believes that organizations such as churches and fraternal groups will be more likely to have a continuous relationship and provide for care of the cemeteries and less likely to defraud their consumers. The court finds that this is "rational speculation" on the part of the legislature. That Plaintiff thinks it could have crafted better legislation is of no moment in the court's equal protection analysis. *See Beach*, 508 U.S.

at 315–16, 113 S.Ct. 2096 ("the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration"). Furthermore, Plaintiff's belief that the legislature has acted "unwisely" also does not warrant judicial intervention. *See id.* at 314, 113 S.Ct. 2096.

The court finds *Craigmiles v. Giles,* 110 F.Supp.2d 658 (E.D.Tenn.2000), and *Casket Royale, Inc. v. Mississippi,* 124 F.Supp.2d 434 (S.D.Miss.2000), cited by Plaintiff, to be inapposite. There, the plaintiffs argued that the states' licensing requirement for retail funeral merchandise stores was not rationally related to the purposes of the statutes which were protecting the public health and protecting consumers. Here, Plaintiff is not arguing that the regulation of the private cemeteries alone will not meet the purposes intended in the Act, but rather that it would have been better and more efficient if the Georgia Legislature had regulated all cemeteries rather than only those privately owned. This is not a decision for the court to make. *See Georgia Manufactured Housing Association, Inc. v. Spalding County,* 148 F.3d 1304, 1307 n. 7 (11th Cir.1998) (reversing district court order that considered whether county's zoning regulation governing the pitch of roofs actually "advanced the goal of aesthetic compatibility" because the "inquiry imposes an inappropriately high level of scrutiny on the County's decisions"). As the Supreme Court noted in *Beach,* when engaged in a process of line-drawing, the "precise coordinates" of the "legislative judgment" are "virtually unreviewable." 508 U.S. at 316, 113 S.Ct. 2096. Accordingly, the court finds that the Georgia Cemetery and Funeral Services Act of 2000 withstands rational basis review. Thus, the court GRANTS Defendant's motion for summary judgment on Count I of Plaintiff's complaint.

## B. Equal Protection Clause (Refund Provisions)

■ The Act requires all persons, including Association members, who sell preneed merchandise, monuments, or vaults to provide refunds to purchasers under certain circumstances.[3] Plaintiff argues that these refund provisions violate equal protection (1) because businesses involved in other "emotionally-related pre-need goods and services" such as "wedding dresses, houses, world series tickets" are not required to refund purchases to consumers, and (2) there is no legitimate governmental purpose to this provision of the Act.

Defendant argues that the refund provisions of the Act are necessary because

---

3.

(3) Except as otherwise provided in paragraph (4) of this subsection, in connection with the sale of preneed merchandise or services requiring funds to be deposited into a preneed escrow account, to fail to refund, within three business days of the request of the purchase or the purchaser's heirs or assignees, the sales prices plus applicable interest as determined according to rules promulgated by the Secretary of State, provided that such request is made prior to the earlier of:
  (A) The delivery of the merchandise or services; or

(B) The death of the person for whose interment or inurnment the merchandise or services are intended to be used.
(4) In connection with the sale of monuments or vaults, to fail to refund within three business days of the request of the purchaser or the purchaser's heirs or assigns the full sales price, without interest, provided that such request is made prior to the earlier of:
  (A) The delivery of the merchandise or services; or
  (B) The death of the person for whose interment or inurnment the merchandise or services are intended to be used.
O.C.G.A. § 10–14–17(a)(3) and (4).

unlike in other industries, pre-need of merchandise and services will *not be delivered* until the death of the purchaser. Since pre-need purchases are often made many years prior to death, a person could have moved in the interim or the reputation, ownership, or management of the pre-need dealer could have changed. The purchaser also might have changed religion. Defendant further proffers that the refund provisions protect consumers, often ill or elderly, from high-pressure, emotion-laden tactics, and from fraud since the purchaser of the pre-need items will be deceased at the time of delivery of the services.

The purpose of the refund provisions is to protect consumers. The court finds this is a legitimate governmental purpose. Defendant has set forth rational reasons for protecting consumers from fraud in "pre-need" purchasing. Applying *Beach,* the court cannot say there is no rational relationship between the purposes of the Act and the refund provisions. As described above, there are special circumstances in the relationship between individuals who belong to religious or fraternal organizations, as opposed to consumers and private cemeteries. Moreover, the court finds the fact that the legislature chose to regulate entities providing "pre-need" merchandise and services, and not other "emotionally-laden" purchases such as wedding gowns, is an exercise in "line-drawing" which is "virtually unreviewable" under equal protection. *See Beach,* 508 U.S. at 316, 113 S.Ct. 2096. Furthermore, as Defendant notes, those involved in "pre-need" purchasing are often elderly or ill. The legislature rationally could have believed that these groups needed additional protections.

Plaintiff contends that this provision "essentially renders any cemetery contract void at the will of the consumer." *See* Pl.'s

Resp., at 1 n. 1. Plaintiff further argues that the *refund requirement has* substantially harmed the private cemetery industry because the cemeteries are required to refund the pre-need money for any or no reason. *See* Frost Aff., ¶¶ 15–16. Plaintiff contends that the refund provision turns the private cemetery into a "no-cost bank for its customers" and essentially prevents private cemeteries from participating in the pre-need merchandise market. *Id.,* ¶ 22. All of these factors, however, relate only to the economic impact of the Act and not whether it violates equal protection. Furthermore, in *Panama City Medical Diagnostic,* the Eleventh Circuit upheld a statute exempting hospitals and group practices from a regulatory price cap on the provision of diagnostic services. The court noted with approval that it was possible the "the legislature knew the fee caps would drive out of business everyone subject to them, and thus chose to exempt a small group in order to maintain the availability of diagnostic imaging in Florida." *See* 13 F.3d at 1547. The same rationale could be applied here. Accordingly, the court finds the "refund" provisions of the Act do not violate equal protection. The court GRANTS Defendant's motion for summary judgment on Count III of Plaintiff's complaint.

### C. First Amendment

As noted above, under O.C.G.A. § 10–14–3, the Act does not apply to "governmentally owned cemeteries, fraternal cemeteries, cemeteries owned and operated by churches, synagogues, or communities or family burial plots." *Id.* Plaintiff argues that the Act violates the Establishment Clause because it exempts from regulation cemeteries owned and operated by churches and synagogues.[4] Defendant re-

---

4. In her reply brief, Defendant argues for the *first time that Plaintiff does not have standing*

sponds that the goal of the Act is secular—to protect consumers and the public health and welfare of citizens. Further, the Act exempts more than just religious cemeteries and thus, cannot violate the Establishment Clause because it does not have the effect of advancing religion.

██ To determine whether an act violates the Establishment Clause of the First Amendment, the court considers the three-part test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 n. 7, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (noting that despite heavy criticism of the *Lemon* test, *Lemon* has not been overruled). Under the *Lemon* test, "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . .; finally, the statute must not foster an excessive government entanglement with religion." *Bown v. Gwinnett County School District*, 112 F.3d 1464, 1468–69 (11th Cir.1997) (quoting *Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2125). In order to withstand an Establishment Clause challenge, a statute must satisfy all three prongs of the *Lemon* test. *Id.*

██ First, the purpose of the Act clearly is secular. The goal of the Act is to protect consumers and public welfare, health and safety. There is nothing in the manner in which the Act is implemented or enforced that benefits religious organizations alone. The Act regulates for-profit cemeteries. It does not regulate non-profit cemeteries—including both cemeteries that are religiously affiliated and those that are public or family owned. Second,

the principal effect of the Act does not advance or inhibit religion. The fact that religious cemeteries are exempted from regulation under the Act does nothing to enhance their religious mission, particularly when religious cemeteries are not singled out alone for exemption. The Act also does not foster a preference for one religion over another. Thus, the court finds *Larson v. Valente*, 456 U.S. 228, 246, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) (holding that "one religious denomination cannot be officially preferred over another") cited by Plaintiff, to be inapposite. Finally, the statute does not foster an excessive government entanglement with religion.

Plaintiff argues that religious groups are not exempt from building codes or environmental regulation. In making this argument, however, Plaintiff ignores the fact that it is not only churches and synagogues which are exempt from regulation under the Act. The Act also exempts government and community owned cemeteries. The Act does not require that the family or community cemeteries have a religious affiliation in order to be exempted. Religious entities may be the beneficiaries of laws that, for secular reasons, provide a benefit to a variety of groups. *See Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 10–13, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (plurality opinion). Thus, the court finds that the Act's "scheme of exemptions . . . does not have the purpose or effect of sponsoring certain religious tenets or religious belief in general." *Texas Monthly*, 489 U.S. at 16–17, 109 S.Ct. 890. Accordingly, the court GRANTS Defendant's motion for summary judgment on Count II of Plaintiff's complaint.

---

to raise an Establishment Clause challenge to the Act. Plaintiff moved to file a sur-reply based on Defendant's standing argument. Because the court does not consider Defen-

dant's standing argument, the court DENIES AS MOOT Plaintiff's motion for leave to file sur-reply [56–1].

## III. Conclusion

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment [46–1] and DENIES AS MOOT Plaintiff's motion to file sur-reply [56–1]. The Clerk of the Court is DIRECTED to DISMISS Plaintiff's complaint.