**J. M. FALKNER, Banking Commissioner of Texas, et al., Appellants,**

v.

**MEMORIAL GARDENS ASSOCIATION, Inc., et al., Appellees.**

No. 10441.

Court of Civil Appeals of Texas.

Austin.

Jan. 23, 1957.

Rehearing Denied Feb. 27, 1957.

John Ben Shepperd, Atty. Gen., J. Fred Jones, Asst. Atty. Gen., Sam O. Kimberlin, Jr., Austin, for Dept. of Banking.

Thomas D. Blackwell, County Atty. of Travis County, pro se, and Looney, Clark & Moorhead, Austin, for Thomas D. Blackwell.

Hoffmann & Hoffmann, Richard R. Grummon, Springfield, Ill., J. Hubert Lee, Austin, for appellee.

GRAY, Justice.

Appellees filed this suit against the Banking Commissioner of Texas, his Deputy and Supervisor in the Banking Department and the County Attorney of Travis County. They alleged that Art. 548b, Vernon's Ann. Civ.St., later referred to as Senate Bill 52, or as the Act, is unconstitutional and prayed for a temporary and permanent injunction restraining defendants from enforcing the same against them.

The defendants answered and alleged: that Senate Bill 52 is constitutional; that appellees have not complied with its provisions; that they are operating in violation of Art. 14.37 of the Texas Insurance Code, V.A.T.S., and prayed that all relief be denied appellees; that it be adjudged that they are operating without authority of law and for further relief.

The Attorney General of Texas filed a plea of intervention and prayed that he be allowed to file an information in the nature of quo warranto. Art. 6253, Vernon's Ann. Civ.St. This leave was granted and a petition in quo warranto and cross action was filed.

The Attorney General alleged that appellees are violating Senate Bill 52, that they are doing the business of providing burial and funeral benefits payable partly or wholly in merchandise and services in excess of $150 in violation of Art. 14.37, Texas Insurance Code, and prayed for a temporary injunction restraining appellees from

"* * * conducting any business, by whatsoever name called, providing burial or funeral benefits, payable partly or wholly in merchandise or services, and from doing the business of selling prearranged or prepaid funeral services or funeral merchandise (including caskets, grave vaults,

and all other articles of merchandise or services incidental to a funeral service) in this State under a sale contract providing for prepaid burial or funeral benefits or merchandise to be delivered at an undetermined future date dependent upon the death of the contracting party."

A hearing was had on the applications for temporary injunction (appellees' and the Attorney General's) and both were denied.

This appeal is from the judgment denying the temporary injunction prayed for by the Attorney General.

Appellees are three Texas Corporations: Memorial Gardens Association, Inc., with its principal office in Travis County; Chapel Hill Memorial Gardens, Inc., with its principal office in Bexar County, and White Chapel Memorial Gardens, Inc. with its principal office in Tarrant County. They each own memorial cemeteries maintained under perpetual care. Title 26, Art. 912a–1 et seq., Vernon's Ann.Civ.St. (These cemeteries and their care are not involved here.) They also sell, under written contracts, interment spaces or cemetery lots, vaults, companionate memorials, individual grave markers, family memorials and interment services. The individual grave markers "shall bear the name, year of birth and death of the individual and installation shall be in the" memorial garden named in the contract. The interment services provided for in the contracts are: the opening and closing of the grave and also "the use of chapel tent, lowering device, greens, chairs and other equipment as is usually provided by the Company for this purpose." The sales may be for cash or on installments and the contracts provide for delivery at any time upon the request of the purchaser, his heirs or assigns after full payment of the contract price. The contracts also contain an escalator clause which provides:

"If at the time of delivery of the merchandise described herein the cost

thereof to the Company is less than at the date of this Agreement the Company will refund to the Purchaser such difference in cost, Provided, However, that should the cost of said merchandise at the time of delivery be greater than the cost at the date of this Agreement, the Purchaser agrees to pay, as part of the purchase price, an additional sum exactly sufficient to cover said difference in cost."

The contracts are binding on the purchaser, his heirs, estate and his assigns for the payment of the contract price subject to forfeiture at the option of the Company for failure to pay installments with the return of previous payments to the purchaser.

Appellant here presents three points. These are to the effect that the trial court erred in denying the temporary injunction prayed for by the Attorney General because appellees are subject to but have not complied with: (1) Art. 548b, a valid statute; (2) Art. 14.37, Texas Insurance Code, and (3) the Texas Insurance Code in that they have failed to secure a certificate of authority to do an insurance business.

Appellees admit they have not complied with Senate Bill 52 and say that: (1) they are not subject to its provisions; (2) it is unconstitutional, and (3) it was not validly enacted. They further say that they are not subject to the Insurance Code and that the trial court did not abuse his discretion in denying the temporary injunction prayed for.

The title of Senate Bill 52 is:

"An Act relating to the sale of prearranged or prepaid funeral services or funeral merchandise to be delivered at an undetermined future date dependent upon the death of the contracting party, and the handling of money collected under such contracts; placing the administration of the Act under the State Banking Department; providing that nothing in this Act shall

alter or affect any provisions of the Insurance Code of the State of Texas; prescribing certain offenses and fixing the penalty therefor; making an appropriation; and declaring an emergency."

The Act contains twelve sections and an emergency clause. The following sections are pertinent here:

Section 1 provides:

"Any * * * corporation * * * desiring to sell prearranged or prepaid funeral services or funeral merchandise (including caskets, grave vaults, and all other articles of merchandise incidental to a funeral service) in this State under a sales contract providing for prepaid burial or funeral benefits or merchandise to be delivered at an undetermined future date dependent upon the death of the contracting party (hereinafter called 'prepaid funeral benefits') shall obtain a permit from the State Banking Department authorizing the transaction of this type of business before entering into any such contract. After thirty days from the effective date of this Act, it shall be unlawful to sell prepaid funeral benefits unless the seller holds a valid current permit at the time the contract is made. The seller shall not be entitled to enforce a contract made in violation of this Act, but the purchaser or his heirs or legal representative shall be entitled to recover all amounts paid to the seller under any contract made in violation hereof. * * *

"Sec. 2. This law shall be administered by the State Banking Department. The State Banking Department is authorized to prescribe reasonable rules and regulations concerning the keeping and inspection of records, the filing of contracts and reports, and all other matters incidental to the orderly administration of this law; and he shall approve forms for sales contracts for prepaid funeral benefits. All such contracts must be in writing and no contract form shall be used without prior approval of the State Banking Department.

"Sec. 3. Each organization desiring to sell prepaid funeral benefits shall file an application for a permit with the State Banking Department and shall pay a filing fee of Twenty-five Dollars ($25.00). The Secretary of State shall issue a permit upon receipt of the application and payment of the filing fee. Permits shall expire on March 1st of each year, and may be renewed for a period of one year upon payment of a fee of Ten Dollars ($10.00).

"Sec. 4. The State Banking Department may cancel a permit or refuse to renew a permit for failure to comply with any provision of this Act or any valid rule or regulation which he has prescribed, after reasonable notice to the permittee and after a hearing if the permittee requests a hearing.

"No organization shall be entitled to a new permit for a period of one year after cancellation or refusal by the State Banking Department to renew its permit, but shall thereafter be entitled to a new permit upon satisfactory proof of compliance with this law.

"Any person aggrieved by the action of the State Banking Department may appeal therefrom to a District Court in Travis County, Texas.

"Sec. 5. After the effective date of this Act, all funds collected under contracts for prepaid funeral benefits, including funds collected under contracts made before the effective date of this Act, shall be placed in a state or national bank, or building and loan association in this State and so deposited not less than thirty (30) days after collection, to be held in a trust fund in this State for the use, benefit and protection of purchasers of such contracts.

Any withdrawals from such trust fund shall be accompanied by a certified copy of the death certificate, together with proper affidavits as may be required by the State Banking Department, before such funds shall be released in fulfillment of the contract. In no event shall more funds be withdrawn from the trust account than are originally placed into the fund under any one contract, other than through the payment of accrued interest thereon.

"Sec. 6. Each organization subject to this Act shall designate an agent or agents, either by names of the individuals or by titles of their offices or positions, who shall be responsible for deposit of funds collected under contracts for prepaid funeral benefits. The organization shall notify the State Banking Department of such designation within ten (10) days after it becomes subject to this Act, and shall also notify the State Banking Department of any change in such designation within ten (10) days after such change occurs. If any person acting on behalf of the seller collects any money under such a contract and fails to deliver it, within thirty (30) days after collection, to a designated agent, or if any designated agent fails to deposit the money within thirty (30) days after he receives it, he shall be guilty of a misdemeanor and shall be punished as prescribed in Section 9 of this Act.

\* \* \* \* \* \*

"Sec. 10. All filing fees and examination costs collected under this Act shall be credited to a separate fund in the State Treasury, to be known as the Prepaid Funeral Contract Fund, which shall be used for administering this Act. The State Banking Department is authorized to employ such personnel as may be necessary to carry out the provisions of this Act and to fix their compensation within the amounts made available by appropriation.

"Sec. 10a. Nothing in this Act shall alter or affect any provisions of the Insurance Code of the State of Texas."

Appellees say:

"The Legislature, however, restricted the future delivery to the situation alone dependent upon the death of the contracting party, the original purchaser. The agreement for delivery by appellees is not dependent upon the purchaser's death."

They further say that the purchaser (contracting party) may be one person who purchases for another. The contracts provide:

"That at any time after receipt of the full sum set out above, upon request of the Purchaser, his heirs or assigns, it will deliver to the Purchaser, his heirs or assigns, the above items enumerated and designated as purchased, subject to the following terms and conditions: \* \* \*"

By sections 3, 4, 5 and 6 of the contracts appellees agree to install "upon the request of the Purchaser, his heirs or assigns," if purchased, Garden Vaultoriums, Companionate Memorials, Individual Grave Markers and Family Memorials. Section 7 provides:

"Interment Services: To provide, if enumerated and designated above as purchased, the opening and closing of ―――― graves upon the order of the Purchaser, his heirs or assigns, only in said Capitol Memorial Gardens. Said opening and closing of graves shall also include the use of chapel tent, lowering device, greens, chairs, and other equipment as is usually provided by the Company for this purpose."

Some contracts are doubtless made for the benefit of a third person or persons and are not necessarily dependent on the death of the actual contracting party. However it is clear that they are made in contemplation of the death of the party bene-

fited. It would be possible to install Garden Vaultoriums, Companionate Memorials, Individual Grave Markers and Family Memorials prior to the death of the contracting party or the party benefited. Also the name and year of birth could be placed on the grave marker prior to death but not the date of its occurrence. It also may be said that it would be possible to open the grave provided for in Section 7 supra prior to death but certainly its closing and the use of the other items of services provided in said section 7 could not be furnished under the reasonable meaning of the contracts prior to the death of the party benefited. Moreover the contracts provide that the request for installations and services may be made by the heirs or assigns of the purchaser.

We hold that appellees are engaged in the business of selling prearranged or prepaid funeral services or funeral merchandise to be delivered at an undetermined future date dependent upon the death of the contracting party and are subject to the provisions of Senate Bill 52.

Appellees complain that Senate Bill 52 requires a permit before a person may engage in the business of selling benefits "yet nowhere are any of the conditions under which the permit shall be issued set forth in the Act." They also complain that the Act requires approval of the forms of contract to be used yet "no applicant could tell by reading of the Act what he must do or not do to obtain approval nor is there any guide in the statute which the Department could follow in making regulations under the statute." Section 1, supra, provides that anyone, before entering into any contract for the sale of the merchandise and services therein named, must obtain a permit from the State Banking Department authorizing the transaction of such business. Section 3, supra, simply provides that the Secretary of State *shall* issue a permit upon receipt of the application and payment of the filing fee. Section 2, supra, places administration of the Act

with the State Banking Department. It authorizes the Department to prescribe reasonable rules and regulations for the orderly administration of the law and requires approval by the Department of all contracts before their use. Appellees' complaints under consideration here merely relate to the procedure of administering the Act which gives to the Department the authority to prescribe reasonable rules and regulations for that purpose. The reasonableness or the validity of any such rule or regulation is not under attack. Even if the power of making rules and regulations for administering the Act was not expressly granted then

"It is a cardinal rule of statutory construction that the courts must presume that the Legislature, in the enactment of a law, always intends to confer all such incidental powers as are necessary to render effective the powers expressly granted. Brown v. Clark, 102 Tex. 323, 116 S.W. 360, 24 L.R.A.,N.S., 670; 36 Cyc. p. 1113." Anderson v. Brandon, 121 Tex. 188, 47 S.W.2d 261, 262.

The intent of the Legislature to require all persons to obtain permits before making contracts subject to the Act is plainly expressed and must be given effect. 39 Tex.Jur. p. 166, Sec. 90.

Appellees complain that arbitrary powers are

" * * * delegated under Section 4 wherein the Department may cancel a permit or refuse to renew it for failure to comply with any valid regulation after reasonable notice and hearing. Grounds for cancellation or refusal to renew a permit are not in any way indicated by the statute. No written charges need be filed, no procedure for hearing is established, no manner of appeal from a ruling is set forth."

Section 4, supra, makes the authority of the Department to cancel or refuse to renew a permit dependent on a factual deter-

mination made after notice and after hearing if requested. The Act gives to any party aggrieved by the action of the Department the right to appeal to a district court of Travis County.

A violation of some provision of the Act or of some valid rule or regulation of the Department may be brought to its attention by its own records, by the permittees own refusal to comply, by a third person or in any manner prescribed by the rules of the Department.

■ The Act, Sec. 4, names the conditions upon which the Department may cancel or refuse to renew a permit and the Department is not given unbridled discretion to cancel or refuse to renew permits but standards are set out to guide it in the exercise of discretion on a factual basis. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022.

The Act, Sec. 4, simply vests the Department with authority to determine facts from which it may cancel or refuse to renew a permit. To such extent the act of the Department is quasi judicial only and does not render the Act unconstitutional. Shaw v. Lone Star Building & Loan Ass'n, 123 Tex. 373, 71 S.W.2d 863.

Appellees say:

"The Act is fundamentally unconstitutional because it is confiscatory. It is not intended to be regulatory or give reasonable protection to that part of the public doing business with appellees. It is intended to put appellees out of business because by Section 5 it requires all of the funds paid under the agreement to be placed in a trust fund until delivery without any recognition for the current expenses of salesmen's commissions, office expenses in keeping records and making collections of installment payments, or developing and maintaining the memorial cemeteries in which the merchandise is placed."

This complaint is largely a criticism of the Act. In Glens Falls Ins. Co. v. Hawkins, 103 Tex. 327, 126 S.W. 1114, 1115, Judge Brown said:

"The policy of enacting the law, whether good or bad, was a question for the Legislature, and the courts cannot consider it."

■■ Clearly the Act applies alike to all individuals and corporations desiring to sell prearranged or prepaid funeral services or funeral merchandise to be delivered at an undetermined future time dependent upon the death of the contracting party; it is actual classification by the Legislature and it is made to apply to all persons and corporations in the class. 9 Tex.Jur. p. 555, Sec. 119. The Act does not prohibit the conduct of the business but merely regulates it. This the Legislature has the authority to do. Paragon Oil Syndicate v. Rhodes Drilling Co., 115 Tex. 149, 277 S.W. 1036; 9 Tex.Jur. p. 490, Sec. 66. The fact that the Act requires all funds collected under the contracts to be deposited in a trust fund is a mode of regulation of the business and does not prohibit its conduct. The fact that the Legislature saw fit to impose on the business a regulation that to appellees may seem onerous will not render the Act unconstitutional because the Legislature acting in the public interest was authorized to impose regulations on the business that operate uniformly on all persons engaged in such business. 9 Tex.Jur. p. 490, Sec. 66.

In their attack on the constitutionality of Senate Bill 52 appellees say that it was not validly enacted in that the Bill approved and signed by the Governor is not the Bill actually passed by the House and Senate. In support of this contention appellees introduced in evidence portions of the journals of the House and Senate of the 54th Legislature, Regular Session.

A résumé of what is shown by the journals would not serve any useful purpose

here. A question similar to that here presented was before our Supreme Court in Williams v. Taylor, 83 Tex. 667, 19 S.W. 156, 157, and Judge Gaines said:

"Our constitution provides that after the passage of a bill it shall be signed by the presiding officer of each house, in presence of the house; and we are of the opinion that when a bill has been so signed, and has been submitted to and approved by the governor, it was intended that it should afford conclusive evidence that the act had been passed in the manner required by the constitution. Such being the rule of the common law, we think, in the absence of something in the constitution expressly showing a contrary intention, it is fair to presume that it was intended that the same rule should prevail in this state. There is no provision of the constitution indicating in any direct manner such contrary intention; and the fact that it is provided that journals shall be kept, and that certain things shall be entered thereon, we think insufficient to show any such purpose.

"There exists, as we have seen, another very satisfactory reason for these provisions; and in view of the consequences which are likely to flow from the rule we are of the opinion they afford no sufficient ground for holding that they were intended to furnish a record by which the validity of the statutes should be tested. As was held in Blessing v. Galveston, 42 Tex. 641, whether a statute be valid or not is a question of law; to be determined by the court from such sources of information as it may see proper to resort to, and is not to be decided as a matter of fact upon such evidence as may be adduced. If invalid, it cannot be made good by estoppel, acquiescence, or any lapse of time. If its validity is to be tested by the journals, we see no reason why the courts should not look to them; and they could never be an assurance of the validity of any statute until the journals had been examined, and it had been found that the procedure prescribed in the constitution had been followed. It seems to us that such a rule would lead to inextricable confusion. It is probable that there are few titles of land in this state which do not depend upon some statutory enactment. Let us suppose that some statute for the granting of land certificates, or for the acknowledgment and recording of deeds, or for fixing liens, or for the sale of lands under execution, or even fixing the terms of holding the courts, should, when tested by the journals of the two houses of the legislature, be found not to have been passed in strict compliance with the procedure provided for in the constitution in force at the time of its passage. If the journals are to control, as soon as the court's attention should be called to the fact it would be constrained to hold that the statute was void, and that all titles dependent upon it should fall to the ground."

The same announcement of the law was made in Jackson v. Walker, 121 Tex. 303, 49 S.W.2d 693, with the citation of numerous authorities. See further 39 Tex.Jur. p. 121, Sec. 121.

■ Appellees do not question that the Bill was certified, approved, enrolled, signed by the Governor and deposited in the office of the Secretary of State. The authorities supra are adverse to appellees' contention.

Our holding that appellees are subject to the provisions of Senate Bill 52 and that the same is valid compels our decision whether the trial court erred in refusing the temporary injunction prayed for by the Attorney General.

Senate Bill 52 was enacted in the public interest. Our holding is that it is constitutional. Appellees say they are not subject to its provisions. We hold that they are. In aid of his quo warranto proceeding the Attorney General prayed for a temporary

injunction restraining appellees from violating the provisions of the Bill—entering into contracts not approved by the Department and conducting business without a permit. Appellees have not attempted to obtain approval of their contracts nor to secure a permit, other than to pay the filing fee. Neither have they made any attempt to comply with the trust fund provisions of the Act although the business done by them amounts to many thousands of dollars.

■ Appellees simply say that the Act is unconstitutional and even if it is constitutional that they are not subject to its provisions. Thus they say that they may contract with the public in violation of the public welfare and public interest as declared by the Legislature and also may violate the trust fund provisions of the Act. We think the trial court was authorized to issue the temporary injunction prayed for. McCloskey v. San Antonio Public Service Co., Tex.Civ.App., 51 S.W. 2d 1088. Er.ref.; Stewart Abstract Co. v. Judicial Commission, Tex.Civ.App., 131 S.W.2d 686; 43 C.J.S., Injunctions, § 123, p. 662.

In Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722, the Court said:

"While it is true, as stated in Harding v. W. L. Pearson & Co. (Tex.Com. App.) 48 S.W.2d 964, 966, that 'The rule is also well established in this state that the granting or refusing of a temporary injunction is within the sound discretion of the district court, and that the court's action will not be disturbed on appeal, unless it clearly appears from the record that there has been an abuse of such discretion,' it is also true that the trial court's discretion is not unlimited and does not extend to the erroneous application of the law to undisputed facts. If the facts are such that solely questions of law are presented, the trial court's action is reviewable, and should be reviewed on appeal. Differently stated, the trial court abuses

its discretion when it fails or refuses to apply the law to conceded or undisputed facts." Authorities cited.

From what we have said it clearly appears that the facts are undisputed; that appellees are subject to the provisions of the Act; that they have violated it, and that heretofore they have made contracts to the extent of many thousands of dollars and still fail to comply with the trust fund provisions of the Act. Therefore they have violated and still do violate the public welfare and public interest.

It is our opinion that the trial court was in error in his application of the law to the undisputed facts and that his judgment must be and it is reversed.

Judgment is here rendered that the temporary injunction prayed for by the Attorney General is issued.

Reversed and temporary injunction issued.