(No. 35008.—

MEMORIAL GARDENS ASSOCIATION, INC., *et al.,* Appellants,
*vs.* ELBERT S. SMITH, Auditor of Public Accounts,
*et al.,* Appellees.

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

Hoffmann & Hoffmann, Richard R. Grummon, both of Springfield, and Floyd Demanes, of Peoria, for appellants.

Latham Castle, Attorney General, of Springfield, (William C. Wines, and Burton Berkley, of counsel,) for appellees.

Mr. Justice Davis delivered the opinion of the court:

Plaintiffs, Memorial Gardens Association, Inc., Glendale Memorial Gardens, Inc., and Evergreen Memorial Gardens, Inc., Illinois corporations, brought suit in the circuit court of Sangamon County against the Auditor of Public Accounts and the State's Attorney of Peoria County seeking to enjoin the defendants from enforcing the provisions of an act entitled "An Act concerning agreements for furnishing or delivery of personal property, merchandise or services in connection with the final disposition of dead human bodies and regulating use or disposition of funds paid on said agreements and providing penalties for violation thereof," passed on June 29 and approved on July 14, 1955. (Laws of 1955, pp. 2020-2022; Ill. Rev. Stat. 1955, chap. 111½, pars. 73.101-73.108.) The complaint alleged that the act was unconstitutional and otherwise invalid for the reasons herein discussed. At the request of plaintiffs, the court issued a temporary injunction. Defendants answered, denying the charges of unconstitution-

ality, and admitting the other material allegations of the complaint. The cause was submitted upon an agreed stipulation of facts. After hearing, the trial court dismissed the complaint for want of equity, but continued the temporary injunction in force pending direct appeal to this court based on the constitutionality of such enactment.

The pertinent portions of the act provide that money paid to anyone on a contract for the purpose of furnishing or performing funeral services, or the furnishing or delivery of any personal property, merchandise or services of any nature in connection with the final disposition of a dead human body, "for future use at a time determinable by the death of the person or persons whose body or bodies are to be so disposed of," shall be trust funds and the person receiving such payments is a trustee of such funds. It requires that monies so received be deposited within 30 days in a bank or trust company licensed to do business in this State; that the trustee furnish the depositary with the name of each payor and the amount of payment on each account; that persons or organizations receiving such payments obtain a license from the Auditor of Public Accounts, after giving specified information and filing a fidelity bond of not more than $10,000; that each licensee shall keep books and records of all transactions and shall make reports to the Auditor annually, or oftener if required; and that all records shall be subject to the Auditor's inspection and investigation. The act specifies that the amounts deposited and interest thereon shall not be withdrawn until the death of the person or persons for whose funeral or burial such funds were paid, unless sooner withdrawn and repaid to the original payor, or his legal representative, cases of forfeiture for nonpayment excepted. Forfeiture of payments made is limited to 25 per cent or $35. whichever is greater. The trustee and the depositary are authorized to receive from deposited funds their reasonable expenses and compensation in connection with custody and administration

which shall not exceed in the aggregate 5 per cent of principal and 5 per cent of earnings of funds deposited in each case. Penalties are prescribed for violating the provisions of the act.

It appears from the agreed statement of facts that: The plaintiffs own and operate 12 cemeteries in this State and are members of Associated Cemetery Management, Inc., a service corporation which performs accounting services for its members, which are corporations owning and operating over 200 cemeteries in 22 States. Plaintiffs are authorized to dispose of burial plots and to deal in caskets, burial vaults, grave markers and other merchandise connected with a cemetery or burial establishment. In addition to the sale of burial space, the plaintiffs' business consists principally of contracting for the sale of burial vaults, family and individual memorials or markers, and services in connection with the opening and closing of graves. The contracts for merchandise and services provide for delivery and performance by plaintiffs when items are fully paid for "upon request of the purchaser, his heirs or assigns." There is no performance by the company until full payment is made under the contract. In over 95 per cent of the cases, payments are to be made in installments extending over a period of three years. A 50-cent service charge is to be paid on each installment payment. In the event of default in any of the installment payments for more than 30 days the company may, at its option, declare the agreement null and void and retain the payments theretofore made as liquidated damages. Exceptions, limited to one year, are provided in the event of illness, disability or unemployment, upon notice to the company, with the further stipulation that the prospective purchaser shall supply the company monthly with satisfactory proof of the continuance of inability to pay. All contracts contain an escalator clause which provides that if the costs of merchandise or services at the time of delivery are greater than the cost at the date of contract, the pur-

chaser shall pay an additional sum sufficient to cover the difference in cost, and if the costs to the company upon delivery are less than at the date of contract, the difference shall be refunded.

The contracts also contain a guarantee-of-performance clause whereby the company agrees that it will set aside and place in a trust fund "sufficient money, based upon its present costs and its present wholesale costs with reliable manufacturers to pay for said merchandise and services when delivered," and that the income therefrom shall be used for the best interests of the company, as its board of directors may determine. However, plaintiffs do not agree, in the case of an installment payment contract, to deposit any amount in such trust fund until all installments have been paid in full. Presently, plaintiffs have deposited over $294,000, in an irrevocable trust fund to guarantee performance and have deposited over $96,000 in a special account for future trust funds. Total gross income of plaintiffs for the years 1953, 1954 and 1955 was $2,669,529.44 of which $1,679,048.02 was from the sale of personal property and $800,787.89 from the sale of lots, the balance being represented by charges for the opening and closing of graves, interest from trust funds and service charges.

Plaintiffs employ salesmen on a commission basis and their commissions are due and payable at the time a contract is signed. In sales of merchandise, sales commissions average 32.1 per cent, local office salaries 3 per cent, cost of merchandise 31.3 per cent and various operational expenses 33.2 per cent of the purchase price, and the balance of .4 of 1 per cent is profit. The average price of vaults is $85, family memorials $168.50, companionate memorials $237.50 and interment services $30. While contracts are made with persons of all ages, more than half are executed with persons in the 40 to 50 year age bracket, who have an average life expectancy of almost 29 years according to the standard tables of mortality submitted by plaintiffs. Approxi-

mately 5 per cent of plaintiffs' sales of merchandise or services are made at need or at death, and about 95 per cent on the "pre-need" or before death plan.

It is apparent that the transactions between plaintiffs and their customers do not consitute present sales. The company agrees "to obtain for the benefit" of the purchaser the merchandise specified or substitutes therefor. The contract does not contemplate that delivery will be made or services rendered until after the death of the purchaser. Delivery may be, and usually is, made to his "heirs and assigns" and then only upon request and after full payment of the purchase price. On the contract date, the merchandise is not necessarily in possession of the company or even in existence. Meanwhile, for a period of time as indefinite as life, the company has possession and control of the purchase money paid and, though a trust fund is to be created to guarantee performance, only sufficient money will be set aside to pay for merchandise and services and such indefinite sum will not be set aside until the installment contract is paid in full. Moreover, the income to be earned from the funds set aside between time of payment and the death of the purchaser is "to be used for the best interests of the company or its nominees, as its board of directors may determine." Thus the benefits from such funds inure entirely to plaintiffs, while the risk of increased costs between the date of the contract and performance rests upon the purchaser.

We also note that while plaintiffs contend that the successful operation of their business requires the immediate deduction from payments of 32.1 per cent for commissions and over 36 per cent for other operational expenses, the agreement fails to advise the purchaser of such fact. The provisions of the guarantee-of-performance clause, though indefinite, are bound to induce purchasers to believe that they are providing a fund to insure their proper burial. In view of such sales and operational expenses, the legislature

undoubtedly considered the question of the ability of plaintiffs to fulfill their contractual obligations. In the light of this background, we shall examine the charges of invalidity brought against the statute.

Plaintiffs urge that the act constitutes an unwarranted exercise of the police power; and that it is confiscatory of plaintiffs' business and thereby violates the due process provisions of the State and Federal constitutions. We will first consider this contention. The police power is an attribute of sovereignty inherent in every government. It has been reserved to all the States by the constitution of the United States. (*Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23; 11 Am. Jur. p. 966, par. 245.) While it is not without limitation and may not be exercised arbitrarily, the legislatures of the States have broad discretion in the passage of statutes in its exercise. (*Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, 32.) When the legislature has considered a problem and enacted legislation thereon, the act is presumptively a valid exercise of the power and the burden rests upon the one assailing the statute to show that it is without reasonable basis and entirely arbitrary. (*Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, 32; *Stewart* v. *Brady,* 300 Ill. 425; *O'Gorman & Young, Inc.* v. *Hartford Fire Insurance Co.* 282 U.S. 251, 75 L. ed. 324.) The enactment of statutes having for their object the prevention of fraud, deceit, cheating, and imposition is within the police power of a State. 16 C.J.S. page 924, par. 187; *Baim* v. *Fleck,* 406 Ill. 193; *Carolene Products Co.* v. *McLaughlin,* 365 Ill. 62.

There can be no doubt that the act relates to a proper subject for the exercise of the police power. The public has a vital interest in the proper disposition of the bodies of its deceased members. Persons engaged in this business have been subjected to rigorous regulation specifying the place and manner in which their activities may be conducted and proscribing such activities without license or permit. This

has been done, not only out of proper respect for the dead, but in the interest of public health. Such regulatory statutes have not been confined to the business of undertaking and embalming. In this State burial societies which are engaged in the business of providing burial benefits for the payment of funeral, burial or other expenses on behalf of their deceased members, are subjected to certain compulsions, including the maintenance of reserves in the form of deposits with the Director of Insurance. (Ill. Rev. Stat. 1957, chap. 73, pars. 950-963, incl.) Under the provisions of the Cemetery Care Act, (Ill. Rev. Stat. 1957, chap. 21, pars. 64.1—64.24 incl.) cemeteries within the purview of the act are required to place funds paid for "perpetual care" in trust to guarantee performance of the obligations undertaken. In *Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, we held that act to constitute a valid exercise of the police power. In view of the provisions of the Insurance Code regulating the manner in which burial societies may conduct their business, and those of the Cemetery Care Act, exercising supervision over funds paid for the perpetual cemetery care, the provisions of the act in question requiring the deposit of funds in trust to guarantee contract performance are not unusual. There is nothing unique in requiring one who contracts for performance *in futuro* to give security for that performance. Thus, legislation requires contractors in public construction to give performance bonds, and compels insurance companies to maintain certain reserves and deposit security with administrative authorities charged with the supervision of their activities. The use of such bonds is generally accepted, and it is well settled that the insurance business is affected with a public interest and subject to control by the State in the exercise of its police power. 29 Am. Jur. p. 59, par. 22; *People ex rel. American Bankers Insurance Co.* v. *Palmer,* 363 Ill. 499, 508.

The contracts here involved are analogous to a form of insurance. By payments made during life, the purchasers

seek to insure their burial. The net effect is the same as though a life insurance contract were purchased to provide a sufficient sum payable at death to accomplish that result. In the case of insurance, the right of the legislature to require reserves and the deposit of security is unquestioned. The trust fund provisions of the act in question are designed to accomplish the same purpose, that is, to assure the purchasers that the company will be able to complete their contracts when the time for performance arrives. When we consider that contract payments are to be made in a maximum of three years and that the average time until performance of the "pre-need" contracts is almost 29 years, the justice of the legislation becomes evident. Plaintiffs, themselves, have recognized the need of some protection for the purchaser by including in their form of contract certain vague provisions relative to setting aside a trust fund. These illusory provisions furnish purchaser appeal, but fail to provide the protection which the situation warrants.

Plaintiffs cite *State* v. *Memorial Gardens Development Corp.* (W. Va. 1957,) 101 S.E.2d 425, in support of their contention that the act in question is not a proper exercise of the police power. In that case, the Supreme Court of Appeals of West Virginia held that a similar statute constituted an unlawful exercise of the police power and was invalid. However, there was a vigorous dissent from the opinion which, we believe, contains the better reasoning and is more in accord with general judicial precedent upon the question. In *Falkner* v. *Memorial Gardens Ass'n,* (Texas, 1957) 298 S.W.2d 934, the Court of Civil Appeals of Texas unanimously upheld the validity of an act almost identical to ours. But we need not look to foreign jurisdictions for authority in that *Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, amply sustains our act. We there held that the preservation of funds for the perpetual care of graves is of sufficient public concern to invoke the exercise of the police power, and *a fortiori,* the preservation of

funds to secure proper burial warrants the exercise of such power.

Plaintiffs urge, however, that the act is prohibitory rather than regulatory; that, if refused the right to make the unauthorized deductions from the trust fund, they will be unable to remain in business. They state that the immediate expenses, including commissions and general overhead items, make it impossible to deposit in trust the large amounts required by the act. The same contention was advanced in the West Virginia case and was sympathetically received by the court. It should be considered in the light of the fact that under the contracts in question plaintiffs are not required to make any expenditure until after request for performance and then only after the full purchase price has been paid, plus a service charge of 50 cents on each installment payment. The dissenting opinion in the West Virginia case suggested, and we agree, that it would be most unusual to expect or require prospective purchasers to. "furnish or advance capital funds necessary for the operation of a business." (*State* v. *Memorial Gardens Development Corp.* (W.Va. 1957) 101 S.E.2d 425, 439.) In the case at bar, plaintiffs entered this business by choice. Under their plan of operation they deem it necessary to deduct approximately two thirds of the purchase payments for immediate expenses and commissions and retain about one third of the purchase price to cover actual future commitments, while they assume no risk in connection with an increase in the costs of merchandise or services and receive the income from the sums retained. Such procedure invites regulation of a stringent nature. In the long interval between full receipt of the purchase price and contract performance, the opportunities for fraud are great and risk of insolvency, with consequent inability to perform, apparent. The suggestion that actual costs are a minor item and that the legislature should have required a smaller deposit is unimpressive under the circumstances. The main thrust of

plaintiffs' argument is that the regulations of the act will prevent the operation of its business of "pre-need" sales and that they will be compelled to cease business if forced to make sales only at the time of death. However, the act neither restricts plaintiffs' sales of such property at the time of death, nor prohibits "pre-need" sales. In *Acme Specialties Corp.* v. *Bibb,* 13 Ill.2d 516, the statute under consideration banned the sale of sparklers except to persons licensed to hold public displays. Such provision materially restricted the sale of sparklers, yet we held that the enactment expressed a proper legislative objective and constituted a valid exercise of the police power.

We do not believe that the present statute operates to prohibit plaintiffs' legitimate business. It does regulate the manner in which the business may be conducted. Practically, plaintiffs will no longer be able to collect prospective profits in advance, without furnishing an adequate guarantee for performance. However, this does not prohibit the operation of this type of business. A large discretion is necessarily vested in the legislature to determine not only what the interests of the public welfare require, but what measures are necessary to secure such interests. (*Thillens, Inc.* v. *Morey,* 11 Ill. 2d 579, 593; *Union Cemetery Assn.* v. *Cooper,* 414 Ill. 23.) Plaintiffs' argument amounts to an admission that they will be unable to compete with others who sell the same merchandise and services at the time of actual need. However, the public welfare need not be abrogated to enable an individual to carry on his business in the particular manner in which he has elected to proceed. The analogy which plaintiffs seek to draw between their contracts and retail sales made on the "lay away" plan is fallacious. The "lay away" sale contemplates performance within a relatively short period of time upon payment of the purchase price. Opportunities for fraud are negligible and remedies for nonperformance are readily available.

Plaintiffs contend that the act constitutes an unwar-

ranted interference with the right of citizens to contract with each other and thus violates constitutional guarantees of both the State and Federal constitutions. While rights of contract are favored and protected there is no principle of absolute freedom of contract. It is a qualified right and the State may, in its legitimate exercise of the police power, pass laws which limit or affect the right of contract so long as those regulations are reasonably necessary to secure the health, safety, morals or general welfare of the community. (*City of Chicago* v. *Chicago and North Western Railway Co.* 4 Ill.2d 307, 317.) The constitutional guarantee does not withdraw from legislative supervision that department of human activity which consists in the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies only the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. (*Crowley* v. *Christensen,* 137 U.S. 86, 34 L. ed. 620; *Chicago, Burlington & Quincy Railroad Co.* v. *McGuire,* 219 U.S. 549, 567, 55 L. ed. 328.) In the exercise of the police power it becomes necessary to prohibit some forms of contract entirely and to restrict others, yet the right to do so is unquestioned when the public welfare demands it. Thus the law may deny the common carrier and the telegraph company the right to make any contract with its patrons exculpating liability for negligence, may prohibit the purchase and sale of lottery tickets, and restrict the right of a minor or an incompetent to contract, except for necessaries. The regulations contained in the present act do not amount to an arbitrary or unwarranted interference with contract rights. The act neither prohibits the right to sell the services or merchandise, nor proscribes advance collections. It does require that such funds, when collected, be set aside for the purpose for which they were intended. The public has a vital interest in securing that result and,

insofar as the rights of plaintiffs are affected, those considerations must yield to the paramount public welfare.

Plaintiffs suggest that the act violates section 22 of article IV of the Illinois constitution because it confers special privileges upon the undertakers and funeral directors and therefore amounts to special or class legislation. Defendants have contended, and we agree, that it is difficult to read any classification into this act. It specifically covers "Any payment of money made to any person, partnership, association or corporation" for the goods or services of the type involved, (Ill. Rev. Stat. 1955, chap. 111½, par. 73.101.) and applies alike to all who contract for the sale of such goods and services on a "pre-need" basis and collect therefor in advance. Funeral directors, undertakers, and embalmers are subject to the act if they elect to collect for such commodities in advance of actual need.

The contention that the subject of the act is not embraced within its title, and therefore violative of section 13 of article IV of the constitution, is without merit. Plaintiffs urge that there is nothing in the title to suggest the licensing and trust provisions of the act. We have been liberal in our construction of this constitutional mandate and have held that in order to render a provision of a statute void as not embraced in its title, the provision must be one which is incongruous or has no proper connection with the title of the act. (*Jordan* v. *Metropolitan Sanitary District of Greater Chicago,* 15 Ill.2d 369, 374; *People ex rel. Ryan* v. *Sempek,* 12 Ill.2d 581, 586; *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539, 549.) The constitution is obeyed if all the provisions of the act relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. (*People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565, 587; *Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, 39; *People ex rel. Lindstrand* v.

*Emmerson,* 333 Ill. 606.) The title of the act involved is sufficiently broad to embrace its licensing and trust provisions. It is stated to concern agreements for furnishing or delivery of the services or merchandise in question and "regulating use or disposition of funds paid on said agreements." The aim of the constitutional requirement is to assure that the title of the act express in general terms its purposes to prevent surprise by the insertion of provisions unrelated to its subject which have no legitimate tendency to accomplish the ends expressed in the title. (*Union Cemetery Ass'n v. Cooper,* 414 Ill. 23, 39.) The word "subject" as used in the constitution signifies the matter or thing forming the groundwork of the act. It may contain many parts, originating in, or germane to it, which if traced back, will lead the mind to it as the generic head. (*People v. Sargent,* 254 Ill. 514.) The licensing and trust provisions of the statute all directly relate to the use and disposition of funds paid on the agreements. There is no element of surprise or incongruity and the statute complies with the constitutional mandate.

Plaintiffs further argue that the act is vague and indefinite and involves an unconstitutional delegation of legislative power to administrative officials in contravention of article III and section 1 of article IV of the constitution of this State. The act covers "the furnishing or delivery of any personal property, merchandise, or services of any nature in connection with the final disposition of a dead human body, for future use at a time determinable by the death * * *." Plaintiffs contend it is impossible to determine from this language just what merchandise or services are intended to be covered, and that the act is uncertain because it leaves to conjecture whether monuments and memorials are included. These latter items do not directly relate to the final disposition of a dead human body and are not within the scope of the act. Defendants concede this position and have stated that monuments,

memorials and cemetery lots are excluded from the operation of the statute. Accordingly, we do not find the act vague and indefinite. The administrative provisions of the statute are similar to those of the Cemetery Care Act. (Ill. Rev. Stat. 1957, chap. 21, pars. 64.1-64.24.) In *Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, we held that the latter act did not involve an unconstitutional delegation of legislative power. Much of what was said in that opinion applies here with equal force and reason. There is a distinction between the delegation of true legislative power and the delegation of subordinate authority to execute the law. (*People* v. *Warren,* 11 Ill.2d 420, 427; *Lydy, Inc.* v. *City of Chicago,* 356 Ill. 230, 235.) While the legislature may not divest itself of its proper function of determining what the law shall be, it may authorize others to do those things which it might properly but cannot understandingly or advantageously do itself. (*City of Evanston* v. *Wazau,* 364 Ill. 198, 204.) The constitution does not require that the General Assembly establish absolute criteria whereby every detail and circumstance necessary in the enforcement of a law is anticipated; intelligible standards to guide the agency charged with enforcement are sufficient. (*People* v. *Warren,* 11 Ill.2d 420, 427; *Hayes Freight Lines, Inc.* v. *Castle,* 2 Ill.2d 58, 65.) We anticipate no difficulties in the administration of the present act which cannot readily be met. The contention that it involves an unconstitutional delegation of legislative power is without merit.

Finally, plaintiffs urge that the act establishes a trust where none can lawfully be created; that a buyer-seller relationship cannot be declared by statute to constitute a trustee-beneficiary relationship. They state: "We know of no case construing a statute wherein one of the two contracting parties has been declared by a court of final jurisdiction to be a trustee for the benefit of the other contracting party * * *." In this connection they unsuc-

132

cessfully endeavor to distinguish *Union Cemetery Ass'n* v. *Cooper,* 414 Ill. 23, wherein this court sustained the validity of a statute requiring one of the parties to the agreement to hold funds received in trust for perpetual care. There is no essential difference between the acts in this respect. However, plaintiffs contend that the Cemetery Care Act involves a voluntary trust, whereas the statute in question attempts to create a trust of an involuntary nature. Yet funds may not be accepted for the purposes designated under either act without compliance with the regulatory provisions thereof. If the establishment of a trust is a proper method to protect the public interest and welfare in the one instance, it is not improper in the other. Discretion, as to the means to be employed in correcting an existing evil or avoiding a potential one, is vested in the legislature, and the courts should not interfere unless the method prescribed violates fundamental constitutional rights or is clearly prohibited by law. The fact that the legislature might have evolved a different or better plan furnishes no reason for invalidating an enactment which represents the collective judgment of the law makers on the subject.

The decree of the trial court dismissing the complaint for want of equity is affirmed. The cause is remanded to that court with directions to dissolve the temporary injunction which was continued in force pending this appeal.

*Affirmed and remanded, with directions.*