THE PEOPLE *ex rel.* GEORGE W. LINDBERG, Comptroller, Plaintiff-Appellant, *v.* MEMORIAL CONSULTANTS, INC., Defendant-Appellee.

Third District   No. 76-439

Opinion filed July 29, 1977.—Rehearing denied August 30, 1977.

William J. Scott, Attorney General, of Chicago (Imelda Terrazino, Assistant Attorney General, of counsel), for appellant.

John E. Cassidy, Jr., and Roy P. Hull, both of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

George Lindberg as Comptroller of the State of Illinois brought this action to enforce the licensing provisions of the funeral or burial funds act (Ill. Rev. Stat. 1975, ch. 111½, par. 73.103) against Memorial Consultants, Inc., an Illinois corporation doing business in this state. The act provides that persons who sell funeral merchandise under a prepayment plan must hold the proceeds of sale in trust and must be licensed by the Comptroller. This enforcement action sought an injunction to prevent defendant from doing business without a license and also sought an accounting of all sums received under prepaid contracts since 1955. Defendant filed a general denial and an affirmative defense alleging that

the statute violates defendant's constitutional rights because it is confiscatory.

At an early stage of the proceedings the Illinois State Funeral Directors Association was permitted to intervene as a party plaintiff. Defendant filed a countercomplaint claiming in count I that the members of the association have combined to eliminate competition and to restrain retail trade of burial vaults in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1975, ch. 38, par. 60—3(2)). Count II of the countercomplaint asserted a cause of action under 42 U.S.C. §1983 for deprivation of constitutional rights resulting from enforcement of the funeral or burial funds act and prayed for an injunction restraining enforcement of the act. The intervenors then withdrew from the suit, and the trial court dismissed count I of the countercomplaint, and also dismissed count II as to all counterdefendants except George Lindberg.

The cause was submitted to the court upon a stipulation of facts, and the Circuit Court of Peoria County entered judgment for defendant. Lindberg then filed this appeal.

Section 1 of the funeral or burial funds act (Ill. Rev. Stat. 1975, ch. 111½, par. 73.101) provides as follows:

> "Any payment of money made to any person, partnership, association or corporation upon any agreement or contract, * * * which has for a purpose the furnishing or performance of funeral services, or the furnishing or delivery of any personal property, merchandise, or services of any nature in connection with the final disposition of a dead human body, for future use at a time determinable by the death of the person or persons whose body or bodies are to be so disposed of, shall be held to be trust funds, and the person, partnership, association or corporation receiving said payments is hereby declared to be a trustee thereof."

Section 2 of the act requires the trust funds to be deposited in the name of the trustee, as trustee, within 30 days after receipt, and section 3 requires such trustees to obtain a State license from the Comptroller.

Defendant is engaged in the business of selling burial vaults. During 1972-74, defendant entered into approximately 9,000 contracts for the sale of vaults with gross receipts of $1,250,000, not all of which represented vault sales. The contracts provide for monthly installment payments of the purchase price and also provide that within 60 days after payment of the full purchase price, upon the purchaser's request, defendant will deliver the merchandise purchased subject to the following conditions:

> "(a) The furnishing of or the delivery date for the merchandise and/or services designated as purchased is in no way dependent upon YOUR death or upon the death of any other person or persons.

(b) YOU will within sixty (60) days after payment in full request delivery of the merchandise and services designated as purchased in the "Declarations" and [defendant] agrees that within a reasonable time following receipt of said request it will deliver to YOU said merchandise and services anywhere within the area designated in the "Declarations" at no additional cost to YOU.

(c) YOU may use any or all of the merchandise and services purchased for any purpose whatsoever and for the benefit of any person or persons YOU may designate."

The contract also provides that, if the purchaser does not request delivery within 60 days following payment in full, defendant will hold the present-day cost of the merchandise in the purchaser's name. If the cost of merchandise has increased by the date of delivery, the purchaser must pay the additional cost, and if the cost has declined, the purchaser will receive a rebate.

Plaintiff Lindberg raises two issues on appeal. First, do defendant's contracts come within the purview of the statute, and second, is the statute constitutional as applied to defendant?

Defendant contends here, as in the trial court, that the statute does not apply to its sales because delivery of the vaults is at the request of the purchaser and is not dependent upon the death of any person. We note that the parties have stipulated that the only practical and reasonable use of a burial vault is to contain a coffin, and that defendant's president knew of no instance where a vault was delivered and burial did not take place. It is apparent that in the usual course of defendant's business, vaults are delivered at the time of burial of a decedent.

Confronted with this same argument under a similar statute, the Supreme Court of Tennessee said:

"[O]nly a rare and eccentric individual would in person, or through an agent, purchase for himself a coffin and grave clothes before he died. Human nature is such that the individual revolts at acquiring and possessing during his lifetime such gruesome tokens of his end. A person, not abnormal, would not have such things around him during his lifetime.

The nature of a business pursued by anyone is not determined by the things that may possibly be done in that business or by things that possibly have been done. It is determined rather by the usual course of the particular business." *State ex rel. Attorney General v. Smith Funeral Service, Inc.* (1940), 177 Tenn. 41, 44, 145 S.W.2d 1021, 1023. Accord, *State ex rel. Londerholm v. Anderson* (1965), 195 Kan. 649, 408 P.2d 864.

In the only Illinois case arising under this statute, the contracts also

provided for delivery "upon request." Although the issue of applicability of the statute was apparently not contested, the court did observe:

> "The contract does not contemplate that delivery will be made or services rendered until after the death of the purchaser." *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 122, 156 N.E.2d 587.

■■ We thus conclude that the provisions for delivery upon request do not change the character of defendant's contracts. These sales agreements are for the purpose of furnishing burial merchandise for future use at a time determinable by the death of a person to be buried, and as such are governed by the statute.

Defendant also argues that its contracts are outside the scope of the act because, under the terms of the contract, the purchaser can request delivery of a vault for burial of some other person. As plaintiff points out, section 1 of the act is not limited to contracts providing for burial of the purchaser but instead refers to "* * * the death of the person or persons whose body or bodies are to be disposed of * * *."

Defendant also attempts to read a like limitation into section 4 of the act (Ill. Rev. Stat. 1975, ch. 111½, par. 73.104) which prohibits withdrawals of the trust funds "until the death of the person or persons for whose funeral or burial such funds were paid, unless sooner withdrawn and repaid" to the purchaser under the terms of the contract. Again the plain language of this section permits withdrawal of the purchase price either at the death of the beneficiary of the contract or sooner if the purchaser so requests and if the contract so permits. Obviously this means the purchaser may use the burial vault for himself or may designate some other beneficiary.

In *Reserve Vault Corp. v. Jones* (1962), 234 Ark. 1011, 356 S.W.2d 225, the seller of burial vaults argued that an Arkansas statute licensing sellers of prepaid funeral expenses applied only to contracts which are dependent upon the death of the contracting party. The court stated:

> "Of course, a purchaser might have in mind another member of his family when buying the vault, and it might be likewise considered that certainly, in numerous instances the vault *would* be purchased for the benefit of the contracting party. Accordingly, if appellants' view were correct, the same exact contract would be sometimes within the purview of the Act, and sometimes without the purview of the Act, depending upon whether the contracting party purchased the vault in contemplation of his own death, or in contemplation of the death of some member of his family. Such an interpretation would leave the matter in total confusion, and would open the door to evasive practices. Actually a purchaser probably would not know for whom the vault was being acquired, the

answer to that question depending upon which member of the family first died. At any rate, we find no merit in the contention, and hold that delivery of a vault, under [the contract in question], is conditioned upon a demand made pursuant to a death." 356 S.W.2d 225, 228. Accord, *Falkner v. Memorial Gardens Association* Tex. Civ. App. 1957), 298 S.W.2d 934.

As the cited authorities indicate, the statutory construction urged by defendant would emasculate the act and defeat the clearly expressed legislative intent to regulate all prepaid burial contracts. Hence, we reject defendant's interpretation.

■■ Likewise, defendant cannot avoid operation of the act by an express contractual provision that delivery is not dependent upon the death of any person (see paragraph 5(a) of the contract quoted above). Such a provision is meaningless since it is not only contrary to the usual course of defendant's business, as stipulated by the parties, but in fact is contrary to the obvious purpose and intent of the contract. Also, it is a well-accepted rule that the benefits of a statute may not be waived by an individual in cases where the statute was enacted for the protection of the public generally. *Foreman v. Holsman* (1957), 10 Ill. 2d 551, 141 N.E.2d 31.

The final question is whether the act is constitutional as applied to defendant. Defendant contends that the statute is arbitrary, confiscatory, and unreasonable with no substantial relationship to the public interest sought to be protected. Defendant admits that the burial vault business is a proper object for regulation, but suggests that the requirement that 100% of the purchase price and interest thereon be held in trust makes it impossible to obtain the "working capital" necessary to meet current operating expenses. The cost of the vaults is asserted to be only 35% of the purchase price and the only amount necessary to be secured. Thus, rather than regulatory, the statute is said to be prohibitory.

We first note that section 5 of the act permits the trustee of the funds to receive reasonable expenses and compensation not to exceed 5% of the principal and 5% of the earnings.

■■ This same constitutional argument was considered in *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 156 N.E.2d 587, where the seller of caskets, vaults, grave markers and related services argued that the act was an unwarranted exercise of police power, and was confiscatory of its business in violation of the due process provisions of both the State and Federal constitutions. The court upheld the statute and found that the act regulated the manner in which the business of selling prepaid burial services and merchandise may be conducted but did not prohibit sales in advance of need. Recognizing the opportunities for fraud and risk of insolvency inherent in this plan of business operation, the court

stated that such procedure invites regulation of a stringent nature, and then said:

"Practically, plaintiffs will no longer be able to collect prospective profits in advance, without furnishing an adequate guarantee for performance. However, this does not prohibit the operation of this type of business. A large discretion is necessarily vested in the legislature to determine not only what the interests of the public welfare require, but what measures are necessary to secure such interests. [Citations.] Plaintiffs' argument amounts to an admission that they will be unable to compete with others who sell the same merchandise and services at the time of actual need. However, the public welfare need not be abrogated to enable an individual to carry on his business * * *.

Plaintiffs contend that the act constitutes an unwarranted interference with the right of citizens to contract with each other and thus violates constitutional guarantees of both the State and Federal constitutions. While rights of contract are favored and protected there is no principle of absolute freedom of contract. It is a qualified right and the State may, in its legitimate exercise of the police power, pass laws which limit or affect the right of contract so long as those regulations are reasonably necessary to secure the health, safety, morals or general welfare of the community. [Citation.] The constitutional guarantee does not withdraw from legislative supervision that department of human activity which consists in the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies only the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. [Citations.] In the exercise of the police power it becomes necessary to prohibit some forms of contract entirely and to restrict others, yet the right to do so is unquestioned when the public welfare demands it. * * * The regulations contained in the present act do not amount to an arbitrary or unwarranted interference with contract rights. The act neither prohibits the right to sell the services or merchandise, nor proscribes advance collections. It does require that such funds, when collected, be set aside for the purpose for which they were intended. The public has a vital interest in securing that result and, insofar as the rights of plaintiffs are affected, those considerations must yield to the paramount public welfare." 16 Ill. 2d 116, 127-29, 156 N.E.2d 587, 594-95.

Other States with similar statutes have also held them to be constitutional. *State ex rel. Londerholm v. Anderson* (1965), 195 Kan. 649,

408 P.2d 864; *Utah Funeral Directors & Embalmers Association v. Memorial Gardens of the Valley, Inc.* (1965), 17 Utah 2d 227, 408 P.2d 190; *Messerli v. Monarch Memorial Gardens, Inc.* (1964), 88 Idaho 88, 397 P.2d 34; *Reserve Vault Corp. v. Jones* (1962), 234 Ark. 1011, 356 S.W.2d 225; *Falkner v. Memorial Garden Assoc.* (Tex. Civ. App. 1957), 298 S.W.2d 934; *State ex rel. Attorney General v. Smith Funeral Service, Inc.* (1940), 177 Tenn. 41, 145 S.W.2d 1021. Contra, *State v. Memorial Gardens Development Corp.* (1957), 143 W. Va. 182, 101 S.E.2d 425, 68 A.L.R.2d 1233; *State v. Gateway Mortuaries, Inc.* (1930), 87 Mont. 225, 287 P. 156, 68 A.L.R. 1512.

The weight of authority is clear and so is the law of Illinois. The act is constitutional as applied to defendant. The circuit court erred in entering judgment for defendant. We therefore reverse the judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY and SCOTT, JJ., concur.